# UNION PAC. R. CO. v. PUBLIC SERVICE COMMISSION et al.

No. 6474.   Decided December 12, 1942.   (132 P. 2d 128.)

See 51 C. J., Railroads, sec. 969; 44 Am. Jur., 252.

*George H. Smith, Robert B. Porter,* and *W. Hal Farr,* all of Salt Lake City, for plaintiff.

*Grover A. Giles,* Atty. Gen. and *A. U. Miner,* Deputy Atty. Gen., for defendants.

PER CURIAM.

This matter is before this Court on a writ of certiorari to review a decision of the Public Service Commission of Utah.

On August 22, 1941, plaintiff, a Utah corporation, filed with the Public Service Commission of Utah an application for authority to discontinue the operation of two motor passenger trains between Ogden, Utah, and Malad, Idaho, and two motor passenger trains between Cache Junction, Utah, and Preston, Idaho. After due notice was published, hearings on this application were held. Because part of the service for which discontinuance was requested was in the State of Idaho, the Public Utilities Commission of Idaho instituted a proceeding on complaint to investigate this matter. The Public Service Commission of Utah and the Public Utilities Commission of Idaho arranged to hold joint hearings, one in Ogden, Utah, and the other in Preston, Idaho. It was agreed that the evidence to be adduced at both hearings was to be considered by each commission as being part of its own record in arriving at its decision.

Numerous protests were filed with the Commissions against the granting of the application for the discontin-

uance of the operation of these motor passenger trains by residents, municipal officers, and civic organizations of the communities which these trains served.

At the hearings the plaintiff introduced evidence that for a number of years plaintiff operated between Ogden, Utah, and Malad, Idaho, and Cache Junction, Utah, and Preston, Idaho, daily round trip passenger motor trains. These trains as incidental to the passenger service carried mail, express, milk, cream and newspapers. These were branch lines, the distance between Ogden and Malad being 73 miles, and that between Cache Junction and Preston 51 miles. For a number of years the average number of passengers carried on these lines was less than four persons per day. On some runs the crew which consisted of three persons outnumbered the passengers. The evidence also tended to show that the number of passengers using these trains decreased as time went on, in other words as was aptly stated by one of the witnesses for the plaintiff at the hearings, relative to passengers using the service:

"Their interest in riding that train has reached the vanishing point, * * *."

The cost of operating the Malad run in 1940 was $24,716.-82 on which there was an approximate loss, taking into consideration passenger revenue only, of $23,340. The cost of operating the Preston run for the year 1940 was $16,349.-91, and again taking into consideration only passenger revenue, the loss which the railroad suffered was approximately $15,940. However, the railroad company received additional revenue by the incidental carrying of mail, express, milk, cream and newspapers on these trains. The mail represented the largest item in this additional revenue, in the year 1940 amounting to $5,263.20 on the Cache Junction-Preston branch and $6,109.11 on the Ogden-Malad branch. From these figures it can be seen that the revenue obtained by the railroad from the carrying of express, milk, cream and newspapers was relatively insignificant.

The application was for the discontinuance of the operation of the passenger trains only and not the discontinuance of all train service on these lines. In place of the motor passenger trains which it is now running the plaintiff offered to substitute a mixed train service in connection with its freight service, which could accommodate any passengers who might want to ride the trains.

There was evidence before the Commission that there are good public highways running to and through these communities which the passenger trains now serve. There was also evidence that there were scheduled daily, three round trip bus trips between Salt Lake and Preston, one round trip bus run between Ogden and Malad, and five round-trip runs by the Utah-Idaho Central Railroad between Ogden and Preston. There was also evidence to the effect that a great many of the inhabitants of the communities served by these passenger trains preferred to drive their own cars when they went on short trips such as these trains served.

The protestant's chief point of opposition to the discontinuance of these passenger trains, aside from civic pride, was that they thought their mail service would be adversely affected thereby. Some protestants did give it as their opinion that if the railroad company would offer a better type of service, and more convenient schedules as to time of leaving and arriving, the trains would be better patronized.

The arrangement for the carrying and distribution of mail is solely the province of the United States Postal Department. If the railroad company owes any duty in regard to the carriage of mail it is to the Postal department and not to the public.

From the above facts it is apparent that the public generally was not interested in using the train for passenger service. It had other and more convenient means which it evidently preferred.

Sec. 76-6-16, R. S. U. 1933, provides that the findings and conclusions of the Public Utilities Commission, which

is now known as the Public Service Commission, on questions of fact shall be final and shall not be subject to review. It is a well established rule that this court will not disturb a decision of the Commission unless such decision is capricious or arbitrary, or is not based on sufficient competent evidence. See *Mulcahy* v. *Public Service Commission*, 101 Utah 245, 117 P. 2d 298.

In the case of the *Los Angeles & Salt Lake Railway Co.* v. *Public Utilities Commission*, 80 Utah 455, 15 P. 2d 358, this court in determining the reasonableness of an order of the Public Utilities Commission in denying an application to change the type of service at one of its stations said this court would consider two factors in determining whether the Commission's decision could be justified under any reasonable view of the evidence; (1) the cost revenue factor, and (2) the reasonable service factor.

Let us first consider the cost factor. Undoubtedly the plaintiff has lost considerable sums annually in running these passenger trains. However, its general financial condition is sound. It loses money on all of its passenger trains. Furthermore the losses on these particular passenger trains which it wishes to discontinue, is lessened by the incidental carrying of mail, express, milk, cream and newspapers. We are therefore not prepared to say, if we were to consider the cost factor only, that the Commission was unreasonable in its decision to deny the application of the plaintiff.

When we examine the second factor, the reasonable service factor, we are confronted with an entirely different situation. Passenger trains are run for the primary purpose of carrying passengers. The evidence is clear and undisputed that the public did not use this service to an extent to justify its continuance. We believe that no reasonable mind could say that a railroad should be compelled to run passenger trains at a great expense for the benefit of a few isolated patrons, especially in view of the fact that the plaintiff did not propose to withdraw all service, but offered to run a mixed train in con-

nection with its freight service over these same lines for the benefit of any passenger who might want to use a train; and also in view of the fact that there is adequate public passenger transportation service by another railroad company on one line and by bus on both lines. It is apparent that otherwise than herein stated, there is no public necessity or convenience for the continued operation of these trains.

The order denying the application of the plaintiff is set aside.