# COLLETT et al. v. PUBLIC SERVICE COMMISSION et al.

No. 7279.   Decided November 4, 1949.   (211 P. 2d 195.)

See 60 C. J. S., Motor Vehicles, sec. 123. Grounds for certificate of convenience and necessity, see note, 67 A. L. R. 957. See, also, 9 Am. Jur. 449.

*Richards & Bird,* Salt Lake City, *W. C. Lamoreaux,* Salt *Lake City, Callister, Callister & Lewis,* Salt Lake City, for plaintiffs.

*S. N. Cornwall*, Salt Lake City, for defendants.

PRATT, Chief Justice.

This case is before the court on a writ of certiorari to the Public Service Commission; and involves the proceedings before that commission wherein R. A. Gould, a certified common carrier of this state sought to have his certificate transferred to the Lang Transportation Company, a common carrier in interstate commerce. The parties are engaged in the handling of petroleum and petroleum products. Gould and the Lang Company had entered into an agreement to sell and transfer Gould's rights to the Lang Company. The petition sought either an approval of the transfer or the cancellation of Gould's certificate and the issuance of a certificate to the Lang Company. Protestants are competitors. The W. S. Hatch Company appeared in the hearing before the commission but does not appear in this review. If the transfer of, or the substitution of, certificates is not approved, Gould will continue business as before. The sale price of Gould's business, as distinguished from his equipment, is $20,000.

The Commission found that the Lang Company is financially responsible, fit, willing and able to operate as a common carrier, and will comply with the laws of the State of Utah, and not burden the highways unduly. They also found that the public interest would not be adversely affected. As to the question of public convenience and necessity the commission made the following determination:

"In Case No. 2882 heretofore heard, being the application of R. A. Gould, this Commission found and determined that public convenience and necessity required the rendering of service by Gould as in said application prayed, and pursuant to its report in said case made, issued to Gould, on or about the 27th day of August, 1947, Certificate of Convenience and Necessity No. 784, authorizing Gould to operate as a common motor carrier for the transportation of petroleum and petroleum products, except road oil and asphalt, in bulk, between Salt Lake City and Woods Cross on one hand and all other points and places in the State of Utah on the other.

"On or about said 27th day of August, 1947, in other cases then pending, this Commission issued further certificates of convenience and necessity as follows: (Refers to Certificates No. 783, 785, 786, and 834)

"This Commission in said cases found and determined that public convenience and necessity required the services of each and all of said carriers as in said certificates authorized and prescribed. Such finding and determination is now final and absolute in each of said cases, and no contention by any party to this proceeding is now made that public convenience and necessity do not continue to require the rendering of the service as in said certificate ordered and authorized by each of the holders thereof, and each of the holders of said certificates, including the Applicant Gould, has since the issuance thereof continued and now continues to exercise the rights and perform the service in said respective certificates authorized and to discharge his or its duty to the public thereunder.

\* \* \* \* \*

"\* \* \* The motor carrier rules and regulations of this Commission now in force and effect preclude transfer from one carrier to another of operating authority and require that the certificate of convenience and necessity of the retiring carrier be cancelled and annulled and that a new certificate of convenience and necessity with like authority be issued to the carrier who undertakes the performance of the service. If the transaction herein proposed be authorized by this Commission, it must be carried out pursuant to such procedure.

\* \* \* \* \*

"The contention was made at the hearing and in their briefs by certain parties protestant that applicants were under the duty of showing in this case that public convenience and necessity now require the service sought in this case to be rendered by Lang. As hereinabove shown, this Commission has determined in a prior proceeding that public convenience and necessity require the services which Gould is authorized to perform under said Certificate No. 784. Lang proposes simply that he may be authorized to enjoy the rights and discharge the obligations and duties of Gould. Lang seeks the right to perform those services which Gould is presently authorized to perform, nothing more. It having been determined by this Commission that public convenience and necessity require such services, that question is not an issue in this case and need not again be determined. The motor carrier rules and regulations of this Commission now and since June 1, 1937, in force and effect so provide; and the procedure of this Commission in cases such as this has been consistently in accordance therewith."

The order of the commission cancelled the Gould certificate and issued the Lang Company a certificate.

Protestants rely upon the following alleged errors:

I.  A Certificate of Public Convenience and Necessity issued by the Public Service Commission of Utah is not a property right and cannot be transferred without the approval of the Commission.

II.  The Public Service Commission of Utah has no authority to transfer a Certificate of Public Convenience and Necessity in the absence of a showing of public convenience and necessity.

III.  The Public Service Commission of Utah cannot take judicial notice of the existence of public convenience and necessity based upon evidence at a prior hearing in another case.

It should be kept in mind that the primary interest involved in these cases is that of the public. *Union Pacific Railroad Co.* v. *Public Service Commission,* 103 Utah 459, 135 P. 2d 915. The "convenience" and "necessity" involved in the determination of an application is the public convenience and necessity, not that of individuals. *Malcahy* v. *Public Service Commission,* 101 Utah 245, 117 P. 2d 298. Competent evidence from which a reasonable mind could believe or conclude that the required facts exist is sufficient. It would seem reasonable to believe from the following facts that public convenience and necessity does exist for the continuance of the service contemplated: An increase in carrier service is not contemplated by the application; only a substitution of certificate holders is contemplated; and public convenience and necessity has once been decided as existing, and has been recognized as continuing to exist to the present time by continuous exercise by Gould of his certificate rights, which had not been revoked prior to this hearing. The only important question under such circumstances is that of the qualification of the

prospective new certificate holder to render the necessary public services. The question as to whether or not the opportunity to hold the newly issued certificate should be offered to existing certificate holders rather than a stranger is more a question of private interests than a question of public interest. If the Commission were restricted to present certificate holders, it might have a rather serious injurious effect upon the carrier who wishes to abandon his certificate and retire from business. His years spent in working up a good will would net him nothing, as no one would be interested in taking over where he leaves off. We do not wish to imply, however, that the Commission may act arbitrarily in the matter. There is no evidence of arbitrariness in this case.

The parties are in agreement that if a certificate is transferrable, it cannot be transferred without the approval of the commission. The contract of sale and transfer recognizes this, as it is conditioned upon that approval. Whether or not the right it gives the certificate holder is called a property right is beside the question. It is at least, a right that has sufficient independence of its holder to be made the subject of transfer in case of death of the certificate holder (Sec. 76-5-40, U. C. A. 1943) ; and to have been assignable at one time in this state. Section 76-5-4, Rev. St. Ut. 1933, later repealed.

The matter that divides the parties is really that of competition. Whether the shifting of the right from one carrier to another, be called a transfer or a cancellation and substitution, makes little difference if the commission gives notice (Sec. 76-4-19, U. C. A. 1943) and makes findings protecting the public interest (Sec. 76-5-18, U. C. A. 1943) as a foundation for the substituted certificate. Notice of the hearing was given; and the Commission has made findings of fact. It seems fair to say that the repeal of the section permitting an assignment of the certificate (cited above) indicates that the Legislature had in mind that the applicant should acquire no rights merely by assignment.

The Commission took the view, that the principal question in such a problem as this is that of the financial status, fitness, willingness and ability of the proposed new certificate holder to carry on the business; that so far as the public is concerned, the public convenience and necessity would not be adversely affected by the change in certificate holders. The protestants made no effort to show that conditions had so changed that there was no necessity for Gould to continue in business. They really fear the competition of the Lang Company—that it will adversely affect their business—a matter that did not seem to bother them so long as Gould remained in business. The theory upon which the case was heard before the commission is evidenced by the following quotations from statements of counsel for the protestants, and the commissioners:

"Commissioner: Well, we are trying out, primarily, I should think, the matter of public convenience and necessity.
"Counsel: Yes.

\* \* \* \* \*

"Counsel: We think competition is healthy; we think the public requires it. We think there is now a tight competitive condition existing in the State of Utah, a matter which we propose to go into. But, we think the transfer of Gould's small operation to a corporation as large as Lang must be considered by the Commission to involve something other than a straight transfer with no effect upon the competition except the kind that Gould has given.

"Lang is a large carrier, and it is going to have certain advantages—it can't help it. We think the Commission should be aware of that, and we are trying to make it aware of that fact in this hearing, that this a transfer of a small operation to a large operator.

\* \* \* \* \*

"Counsel: We are not trying to eliminate competition; we are trying to have the Commission determine whether the competition that would result would be ruinous, would be cut throat, would go too far for the interest of the existing carriers, and, therefore, not to the best interests of the public.

\* \* \* \* \*

"Counsel (Reading from an authority): The policy of the Public Utilities Act is that existing utilities shall receive a fair measure of protection against ruinous competition. Where one company can serve the public conveniently and efficiently, it has been found from experience that to authorize a competing company to serve the same

territory ultimately results in requiring the public to pay more for transportation in order that both companies may receive a fair return on the money invested, and the cost of operation."

Considerable evidence was taken concerning the equipment used and the contracts possessed by the various parties and some opinion evidence expressed as to the effect upon protestants' business of the entry into the picture of the Lang Company, which is considered to be a much larger company than the protestants, or Gould. In fact, the evidence shows that Gould was smaller than the protestants Collett, and Cantlay and Tanzola, Inc. But these statements and this evidence merely raise questions of fact that are for the Commission, not the court, to decide.

As to the matter of competition so emphatically emphasized by counsel for the protestants, we should not overlook the fact that in this case we are not dealing with an application, the granting of which, will increase the number of competitors in the field, and thus jeopardize the service to the public. We are dealing with merely a substitution of one carrier for another. The Commission believes, and so found, that the public interest would not be adversely affected by the substitution. This is a matter for them to decide; and we cannot say merely from the size and success of the new applicant that the Commission was in error.

We are of the opinion that the decision of the Commission should be affirmed. It is so ordered.

WADE, LATIMER and McDONOUGH, JJ., concur.

WOLFE, Justice (concurring in the results).

I concur in the results and generally in the reasoning.

I am not prepared to say that where one holder of a certificate of convenience and necessity drops out and causes another to be substituted for him that the commission should not, on objection of competitors, be convinced

that there still remains business enough for all the remaining certificate holders. For instance, oil or ore hauling are typical cases where feast periods may be followed by famine periods. As says the opinion, neither is the commission nor are we officially interested in aiding a carrier to come out whole or cash in on his good will, but instead in the matter of service to the public, although we recognize that if the primary consideration is satisfied, it would encourage motor contract and common carriers to know that the good will they had built up by giving satisfactory service over the years would not go for naught. However, they take that risk. If the situation were such that there was not sufficient business for the protestants, I would think that the commission would have not only the right, but the duty to refuse this transfer and deny Lang a certificate of convenience and necessity. I agree that in this case and in certain other cases the commission might take administrative notice of the fact that there was ample business for all, especially when the protestants did not claim otherwise. What I have just said is not the same as saying that the Public Service Commission can take judicial or official notice of the existence of public convenience and necessity based upon evidence in a prior hearing in a related case, although the commission could take official notice of its own public acts and administrative notice of facts which it does know because of its administrative familiarity with them. See "Official Notice, K. C. Davis, page 540, Vol. 62, Harvard Law Review, February, 1949.

A word about the really substantive and important part of this case expressed by the prevailing opinion in this wise, "The matter that divides the parties is really that of competition" and in this statement as the real reason for opposing the transfer, I agree. But I do not wish to be interpreted as holding that the protestants are merely selfishly trying to keep out competition. What they fear is that a big and powerful operator such as Lang will by efficient methods, its organization, money, influence and

credit which it commands, drive out the smaller operators. I am not without sympathy for their position and understanding of their fears. For it affects our economic system and the social philosophy back of it.

Behind the simple questions of Lang Company's financial responsibility and ability to operate as a common motor carrier, the burden on the highways, the immediate public interest in having convenient and adequate service, and local problems affecting a very small segment of our economy, lurk the large and age-long conflicts between warring views of proper public policy. Should the tendency in motor carriage of commodities toward monopoly be checked, and regulated competition be encouraged, or should motor carriers finally go the way of the railroads or even more toward the natural monopolies such as gas, power, light and telephone utility companies? And this conflict is simply a phase of the eternal struggle going on in our economy between the little business men and the giant corporations. It was illustrated by the losing fight the neighborhood grocer carried on against the chain stores with their mass buying and consequent lower prices to the consumer. They not only affect prices and our economy, but have profound social consequences. An economy of small farms and farmers, small businessmen and artisans leads to one sort of culture. An economy of large corporations, large plantations, great aggregations of capital leads to another. I need only call attention to the fact that what the protestants are trying to bring into the spotlight is, that involved in this situation is a small part of a broader and more fundamental struggle of the little fellow against the bigger fellow and still bigger giant. Laissez faire is not coterminous in meaning with competition. Laissez faire is the handmaiden of monopoly, enabling the powerful to crush or merge or absorb its smaller rivals. But I cannot see that the commission can take into account these more ultimate economic consequences. It must be limited to the more immediate questions and the more immediate and

local factors. Will the continuation of the same or even less number of competitors adequately cover the field; for more healthy competition should one or more be eliminated at this opportunity, or should the public for more adequate service have more competition, and if so, where is the limit after which competition will cause its own demise? These are the immediate and sufficiently complicated questions on a geographically local level. And if those questions have been answered by the commission not unreasonably in view of the evidence and known factors, it has performed its duty and we cannot interfere. Back of all of these local questions are the large and broad questions of national and regional economic policy, too broad and to profound to be solved on a local level.