WYCOFF CO., Inc., v. PUBLIC SERVICE COMMISSION et al. (two cases).

Nos. 7409, 7410. Decided February 7, 1951. (227 P. 2d 323.)
Rehearing Denied April 16, 1951.

See 60 C. J. S. Motor Vehicles, Sec. 96. Grant or denial of certificate of necessity or convenience, see note 67 A. L. R. 957. See, also, 37 Am. Jur. 530.

*Wayne C. Durham,* Salt Lake City, for plaintiff.

*Clinton D. Vernon,* Atty. Gen., *Rex Hanson,* Salt Lake City, *A. John Brennan,* Asst. Atty. Gen., *Mark K. Boyle,* Asst. Atty. Gen., *Stewart, Cannon & Hanson,* and *E. F. Baldwin,* all of Salt Lake City, for respondent.

LATIMER, Justice.

These matters are before the court on petitions to review two orders of the Public Service Commission issued on August 8, 1949. Case No. 7409 involves an aplication by Wycoff Company, Inc., for a permit to operate as a contract motor carrier for the transportation of motion picture films, advertising matter, and theatrical supplies to the Orpheum Theatre at Tremonton, Utah and the Main Theatre at Garland, Utah. Case No. 7410 involves an application of Wycoff Company, Inc., for a certificate of convenience and necessity and authority to operate as a common carrier for the transportation of motion picture advertising, theatre sup-

plies and newspapers from Salt Lake City, Utah, to the Idaho state line over highways Nos. 91 and 89. The cases were, by stipulation of the parties, consolidated for hearing before the Commission and in presentation to this court. For this reason, this one opinion will dispose of both appeals. Wycoff Company, Inc., will be referred to as the plaintiff; Roy Hill, doing business as Seamons Truck Line, will be referred to as the defendant; and the Public Service Commission of Utah will be referred to as the Commission.

On September 13, 1939, Northwestern Express, Inc., the predecessor in interest to Wycoff, Inc., filed an application with the Commission for permission to operate as a contract motor carrier of motion picture film for B. F. Winzler and C. J. Shultz, operating theatres in Tremonton, Utah, and for G. R. Lawrence, operating a theatre in Garland, Utah. A hearing on this application was held on September 27, 1939, and on October 4, 1939, the Commission issued a permit granting the Northwestern Express, Inc. authority to operate as a contract motor carrier for the three named persons.

On July 11, 1942, Northwestern Express, Inc. wrote to the Commission requesting permission to cease operations indefinitely due to its inability to meet the requirements of the Office of Defense Transportation, and on January 27, 1944, the Commission issued an order suspending Northwestern's contract carrier rights.

On April 7, 1946, M. S. Wycoff directed a letter to the Commission advising that he had purchased all of the stock of the Northwestern Express, Inc., except two shares which were owned by two qualifying stockholders. In that letter Wycoff requested that the Commission issue an order setting aside the suspension orders then in effect against the company. On April 24, 1947, the Commission issued an order which set aside the suspension order of January 27, 1944, and authorized the Northwestern Express, Inc. to

operate upon and over the highways of the State of Utah, subject to the same restrictions as specified in the original permit granted on October 4, 1939. At the time of this reinstatement, the three contractees named in the 1939 permit were not operating theatres in Garland and Tremonton but the commission was not informed of the change in ownership.

On April 7, 1947, Northwestern Express, Inc. secured a contract with the manager of the Orpheum Theatre at Tremonton to transport films and supplies. Apparently this contract was left with the Commission on May 16, 1947. However, no application was filed and no request was made to the Commission for permission to serve that theatre and no action was taken by the Commission either to grant or deny a permit to carry for that contractee.

Northwestern Express, Inc. continued under that name and style until January 1, 1948, at which time the name of the corporation was changed to Wycoff Company, Inc., the plaintiff herein.

The Seamons Truck Line commenced operation in 1932, under the management of its then owner, Ray T. Seamons. Subsequently, Seamons and his wife were separated and the permits were transferred to the wife, Melva H. Seamons. On November 9, 1944, the Commission issued an order authorizing her to operate as a contract carrier of motion picture films and other theatre supplies for some eighteen theatres located in northern Utah. The theatres located at Tremonton and Garland were not included in the authority granted by this order. On April 15, 1947, the Commission approved an agreement between Melva H. Seamons, lessor, and her brother, Roy Hill, defendant herein, wherein all operating rights of the lessor were leased for a period of five years by the defendant.

On March 21, 1947, defendant Hill filed an application

with the commission for permission to operate as a contract motor carrier of films and theatre supplies for D. W. Harris, doing business as the Orpheum Theatre, and Dorian Toland, doing business as the Liberty Theatre, both located in Tremonton, Utah. The hearing on this application was set for April 16, 1947, and the affidavit of mailing shows that M. S. Wycoff of Helper, Utah, who was then the owner of Northwestern Express, Inc., received notice of the hearing. On July 9, 1947, the Commission issued a permit authorizing defendant to serve the two Tremonton theatre operators.

On June 18, 1947, defendant applied to the Commission for authority to serve five additional theatre operators in this area, one of whom was Reed D. Wood, operator of the Main Theatre at Garland, Utah. The hearing on this application was set for November 14, 1947, and again M. S. Wycoff of Helper, Utah, was mailed notice of the hearing. On January 9, 1948, the Commission issued a permit authorizing defendant to serve the five additional theatre operators, including the one located at Garland, Utah.

On May 21, 1948, defendant filed an application with the Commission for a certificate of convenience and necessity to operate as a common carrier of film, theatre supplies and papers from Salt Lake City to Lewiston, Utah, over two routes, one running through Tremonton and Garland, Utah, including off-route points. While this application was pending, and before any hearings were held thereon, plaintiff, on May 1, 1949, obtained a proposed contract to haul for the Orpheum Theatre at Tremonton and the Main Theatre at Garland, Utah. These two theatres had been acquired by the Allied Theatres Company about two months before the execution of the contract, but they were being served by defendant.

On May 25, 1949, plaintiff filed an application with the Commission for a permit to operate between Salt Lake City and Garland, Utah, as a contract motor carrier of motion

picture film and advertising material and accessories for the Allied Theatres Company, operating the Orpheum Theatre at Tremonton and the Main Theatre at Garland. Subsequently, on June 13, 1949, plaintiff filed an application for a certificate of convenience and necessity to operate as a common carrier of newspapers, motion picture film, motion picture advertising material and other theatre supplies over regular routes from Salt Lake City to the Idaho state line, via U. S. Highways Nos. 91 and 89, serving intermediate points, together with off-route points, and return.

Plaintiff's two applications and the one application of the defendant were consolidated for hearing. After a hearing on the three conflicting petitions, the Commission concluded that a certificate of convenience and necessity to operate as a common carrier of film, theatre supplies and newspapers should be issued to defendant, and on August 8, 1949, it so ordered. In view of the fact that no appeal has been taken from that order it cannot be attacked in these proceedings and we must assume the commission concluded that the statutory requirements necessary to justify granting that certificate had been established.

The issues raised by plaintiff's two perfected appeals revolve around the findings and conclusions of the Commission. Generally, it found that plaintiff had failed to show that existing transportation facilities in the area did not provide adequate and reasonable service; that the granting of either the contract motor carrier permit or the common motor carrier certificate to plaintiff would detract from the business of existing carriers and would impair transportation services; that the defendant, who had been satisfactorily serving some 23 motion picture houses in the area under authority of the Commission, was ready, able and willing to render adequate and all necessary service to the area; and that the granting of either of plaintiff's applications would be detrimental to the best interests of the people in

the area. The Commission concluded from the testimony that there was not sufficient transportation business available in the area to justify granting certificates of convenience and necessity to two common carriers to operate therein, and with one common carrier to serve all users there was no necessity for an additional contract carrier.

On this appeal, plaintiff contends that the Commission acted contrary to statutes; that it was arbitrary and capricious in denying plaintiff's applications; and that the findings above referred to are not supported by substantial evidence.

The principles governing this court in the review of cases from the Public Service Commission are well ■ established. In the case of *Goodrich* v. *Public Service Commission of Utah,* 114 Utah 296, 1948, 198 P. 2d 975, we said:

"We have repeatedly held that in reviewing cases certified to this court from the Public Service Commission on a statement of error that the Commission's report, findings, conclusions and order are unlawful, we are limited in our review to ascertaining whether or not the Commission had before it substantial evidence upon which to base its decision. Only in the event that we find the Commission acted arbitrarily, capriciously or unreasonably in denying applicant's petition can we set aside the order."

Section 76—5—18, U. C. A. 1943, sets out the elements to be considered by the Commission in its determination of whether or not an applicant should receive a certificate of convenience and necessity to operate as a common carrier. That section provides, in part, as follows:

"* * * If the commission finds from the evidence that the public convenience and necessity require the proposed service or any part thereof it may issue the certificate as prayed for, or issue it for the partial exercise only of the privilege sought, and may attach to the exercise of the right granted by such certificate such terms and conditions as in its judgment the public convenience and necessity may require, otherwise such certificate shall be denied. Before granting a certificate to a common motor carrier, the commission shall take into consideration the financial ability of the applicant to properly perform the service sought under the certificate and also the character of the highway over which said common motor carrier proposes to

operate and the effect thereon, and upon the traveling public using the same, and also the existing transportation facilities in the territory proposed to be served. If the commission finds that the applicant is financially unable to properly perform the service sought under the certificate, or that the highway over which he proposes to operate is already sufficiently burdened with traffic, or that the granting of the certificate applied for will be detrimental to the best interests of the people of the state of Utah, the commission shall not grant such certificate."

Section 76—5—21, U. C. A. 1943, as amended by Section 3, Chapter 105, Laws of Utah 1945, sets out the elements to be considered by the Commission in determining whether or not a contract carrier permit should be granted to an applicant. That section, as amended, provides in part as follows:

" * * * If, from all the testimony offered at said hearing, the commission shall determine that the highways over which the applicant desires to operate are not unduly burdened; that the granting of the application will not unduly interfere with the traveling public; and that the granting of the application will not be detrimental to the best interests of the people of the state of Utah and/or to the localities to be served, and if the existing transportation facilities do not provide adequate or reasonable service, the commission shall grant such permit."

To comply with the above provisions of the statutes, the Commission's refusal to grant plaintiff's application for common carrier rights must be upheld if the evidence permits a finding that public necessity and convenience do not require the services of two common carriers in that area. In the case of its contract motor carrier application, if the evidence permits a finding that it would be detrimental to the best interest of the people of the area, or that existing transportation facilities provide adequate and reasonable service, the Commission's order denying the application for contract carrier authority must also be affirmed.

From the evidence before us, it appears that defendant, at the time he filed his application for common carrier authority, was serving the two theatres located in Tremonton and Garland as a contract carrier. He had been serving

the Tremonton theatre under an authorized permit since July 9, 1947, and the Garland theatre since January 9, 1948, and his services had always been satisfactory. Moreover, the testimony shows that at the time of the hearing and for a long time prior thereto the defendant was serving substantially all the theatres located in the northern Utah area with the exception of two theatres located at Federal Government installations, while plaintiff had obtained contracts with only two of the theatres involved, and these had not been made the basis of an application for a permit. In addition, plaintiff made no legal application to the Commission for authority to haul films as a contract or common carrier in the area involved until May, 1949, a year after defendant had applied for common carrier authority. Therefore, unless plaintiff can establish some rights under the old Northwestern Express, Inc. permit, defendant is clearly first in time both as to operations as a contract carrier and as an applicant for a certificate of public convenience and necessity.

In its consideration of applications for either contract or common motor carrier rights, the Commission can take into account the record of the carriers then in the field, the amount of business available in the area and the number and type of carriers necessary to service the area adequately. Its conclusion that one common carrier can properly service an area and that another carrier competing for the same service in the same area would be detrimental to the best interests of the public can not be held to be arbitrary by this court, if there is evidence which reasonably tends to establish that the volume of business permits only one profitable operation. A somewhat similar problem was presented to this court in the case of *Goodrich* v. *Public Service Commission of Utah*, supra, where we said:

" * * * Furthermore, the Commission could reasonably conclude that it would be for the best interests of all of the localities to be served, to have

common carrier service twice a week rather than have contract carrier service for four shippers once a week. Even though applicant might adequately serve all of the merchants in the three towns, there are other citizens of those towns which at various times, might need the services of a common carrier. In addition, the merchants and citizens living and doing business in other towns near Roosevelt, Utah, have need for an adequate and prompt common carrier service which might be denied them if the protestant was unable to economically operate. The population of the areas served is small and the shipments limited. In view of these factors and the mileage to be traveled the costs of operation are high. To take the principal shippers away from the common carrier might, and probably would, make the difference between a successful or unsuccessful operation. Undoubtedly the applicant and the four contractees would be benefited by the granting of the permit, but to escape a charge of being arbitrary, the Commission need not recognize the demands of a few to the ruination of the many.

"The Commission is in a much more favorable position to determine the benefits and detriments of the two competing systems than is this court. It has decided that the common carrier service will be the most beneficial for all concerned and unless we can determine that the Commission was clearly in error and was capricious in so finding, we are powerless to overturn its decision. No such showing is made in this case."

Furthermore, there is no showing that the convenience and necessity of the public require two common motor carriers of motion picture film and theatre supplies in this area, or one common carrier and one contract carrier. It might be true that the granting of the application for contract carrier authority to serve two of the theatres in the area would be advantageous to the two theatres operated by contractee; but, on the other hand, such action would have a tendency to decrease the amount of merchandise to be hauled by defendant and might result in other theatres being furnished unsatisfactory service. Competition is desirable if the volume of business will permit solvent operations, but, if the field is not limited, insolvency and unsatisfactory service results. The Commission, having granted defendant a common carrier certificate to operate in the area involved, could reasonably conclude that the theatres would be adequately and properly serviced and that the granting of either of plaintiff's applications would be detrimental to the interests of all of the exhibitors in that neither operator could afford to serve them properly.

In the present case, the Commission was faced with a problem of deciding which of the two competing carriers should be granted the certificate, and the record does not compel a finding that plaintiff should have been pre- ferred. On the contrary, defendant's operations over ▌▌ the months had been regular and satisfactory; he had developed his business to a point where he was hauling for most of the show houses; and plaintiff was seeking to enter the territory as a newcomer after its predecessor had some five years before requested a suspension of its service. It had the burden of establishing that public convenience and necessity required its proposed services, and before plaintiff can complain that the Commission was arbitrary in not granting it a permit or a certificate it must carry that burden. In this, the plaintiff has failed.

Plaintiff, however, contends that it had a permit as a contract carrier under the reinstatement order of April 24, 1947, to serve the theatres involved and that the Commission failed to recognize its rights as revived. Defendant, on the other hand, contends that at the time of the reinstatement order the persons who had originally contracted with Northwestern Express, Inc., were no longer operating the theatres involved, had no need for the service, and therefore the contracts could not be revived. The reinstatement order provided in part as follows:

"The Northwestern Express is hereby authorized to operate upon and over the highways of the State of Utah in intrastate commerce over the same routes and under the same restrictions as specified in the Commission's Report and Order dated October 4, 1939 * * *."

Prior to the reinstatement order of April 24, 1947, plaintiff had not operated in this area as a contract motor carrier of theatre supplies since 1944. The contracts which plaintiff claims the Commission has failed to recognize are those entered into by Northwestern Express, Inc., and B. F. Winz-

ler and C. J. Shultz of Tremonton and G. R. Lawrence, of Garland, Utah. At the time of the reinstatement order, the three contractees were no longer operating  theatres and the new owners were not parties to the agreements. Plaintiff's action in obtaining new contracts with different consignees indicates that it believed the old contracts had ceased to be effective. By issuing its reinstatement order, the Commission could not make new contracts with different theatre owners. We, therefore, hold that by reinstating the old certificate the Commission did not grant a permit to haul for parties not named therein.

The orders of the Commission are affirmed.

WOLFE, C. J., and WADE, McDONOUGH and CROCKETT, JJ., concur.