UINTAH FREIGHT LINES et al. v. P.UBLIC SERVICE

COMMISSION et al.

No. 7429.   Decided March 16, 1951.   (229 P. 2d 675)

See 60, C. J. S. Motor Vehicles, Sec. 103.   Review of decisions of Public Service Commissions.   See note 39 A. L. R. 1541.   See, also, 42 Am. Jur. 549.

*Lynn S. Richards, Dan S. Bushnell,* Salt Lake City, for plaintiff.

*Clinton D. Vernon,* Atty. Gen., *Mark K. Boyle,* Deputy Atty. Gen., *Skeen, Thurman & Worsley,* Salt Lake City, for defendants.

CROCKETT, Justice.

Certiorari to review the action of the Public Service Commission of Utah in granting a contract motor carrier permit to Ashton's, Inc., of Heber City, Utah, to operate as a contract motor carrier from Salt Lake City, Heber City and Devil's Slide, Utah, to Roosevelt and Vernal, Utah. In seeking to reverse this order of the Commission, plaintiff raised two main questions: One related to the sufficiency of the evidence to justify the finding that there was no "reasonable or adequate" existing transportation facilities; the other to their claim that because defendant had been performing this trucking operation without a permit, it should be precluded from now obtaining authority for it. A brief statement of facts concerning the companies involved follows in order that the relationship of each to the other may be understood as bearing upon this review.

The defendant, Ashton's Inc., of which Lowe Ashton holds all but qualifying shares, is engaged in the hardware and building supply business in Heber City, and in addition has for several years transported general merchandise from Salt Lake City and Heber City and cement from Devil's Slide, to Roosevelt and Vernal, for business establishments owned by members of the Ashton family. In doing this, applicant was carrying on an operation commenced some years earlier by its predecessor company.

These Ashton business interests were started by Leslie Ashton. In about the year 1898, he established a general mercantile business in Vernal and hauled freight out to the Uintah Basin in connection with his business. In 1915, he

formed the Ashton Brothers Company in Vernal, and in 1923 formed the Leslie Ashton & Sons Company at Roosevelt. Ashton Oil & Gas Company was formed in 1927, and in 1927 there was also formed a partnership, under the name of Ashton's, operating a mercantile business in Heber City, Utah. The companies operated for many years as interrelated units, each owned by Leslie Ashton and one or more of his sons. After the death of Leslie Ashton in 1930, all of the businesses were owned and operated by Mrs. Leslie Ashton and the three sons, sometimes as partnerships and sometimes as corporations. During all this time, the organization in Heber City (Ashton's) transported goods for its own use and for the businesses in Roosevelt and Vernal.

In 1945 and early in 1946, the three sons each consolidated their interests into one of the businesses and released their interests in the others, with the exception of Ashton Oil & Gas Company, which continued to be owned as a partnership by the brothers and Mrs. Leslie Ashton. In this way, each of the sons became the sole owner, except for qualifying shares, of one of the three mercantile businesses. Lowe Ashton's interests were consolidated in the form of Ashton's, Inc., in Heber City, which continued to haul merchandise for the organizations in Roosevelt and Vernal, in substantially the same manner as before.

Although each of the three brothers now owns one of the three businesses individually, the three continue to purchase jointly, advertise jointly, and transport goods by rail and by truck jointly. It is conceded by applicant that after the Motor Carrier Act of 1933, whenever one of the members of the family transported merchandise for the other members of the family and they paid him a handling charge thereon, they were operating without contract carrier's permit and therefore were technically in violation of the law.

In 1948, Ashton's, Inc., at Heber City (Lowe Ashton) made application for a contract carrier permit, which, as finally amended, would allow that company to operate as a contract carrier of cement from Devils Slide, Utah, to Heber City, Roosevelt and Vernal, and as a contract carrier of general merchandise from Salt Lake City and Heber City to Roosevelt and Vernal, for three parties: Leslie Ashton & Sons Company, Roosevelt (Clarence L. Ashton), Ashton Brothers, Inc., Vernal (Rae Ashton), and Ashton Oil & Gas Company, Vernal (partnership).

The application was opposed by several carriers, but the only ones who are before this court are Uintah Freight Lines and Eastern Utah Transportation Company. Ashworth Transfer Company and Salt Lake Transfer Company opposed the granting of operating authority between Devil's Slide and Heber City, Roosevelt and Vernal at the hearing before the Commission, but do not appear in the proceeding before this court so that portion of the permit is not before us for review. The other protestants withdrew their protests at the time of the hearing after amendments to the application had been made which eliminated any conflict with their interests.

Uintah Freight Lines operates as a common carrier between Salt Lake City and the Uintah Basin and was the chief protestant throughout the hearing and is herein called the plaintiff.

The defendant's application was based upon that portion of Sec. 76—5—21, U. C. A. 1943, Chap. 105, Laws of Utah 1945, which requires that in order to be granted a contract carrier's permit the applicant must establish four things:

1. That the highways over which applicant desires to operate are not unduly burdened;

2. That the granting of the application will not unduly interfere with the traveling public;

3. That the granting of the application will not be detrimental to the best interests of the people of the State of Utah and/or the localities to be served;

4. That the existing transportation facilities do not provide adequate or reasonable service.

Said section further provides,

"If, from all the testimony offered at said hearing, the commission shall determine that * * * [the foregoing elements exist] * * * the commission shall grant such permit."

The Commission's findings affirmatively covered all four of these points in favor of defendant.

As hereinbefore indicated, plaintiffs state two principal reasons why the order granting defendant its contract carrier permit should be reversed. The first one, while not exactly so stated by them, amounts to a contention that there is no substantial evidence to support the finding that existing transportation facilities did not provide adequate or reasonable service. Their other contention is that the defendant had been guilty of violating the law in the identical trucking operations it now seeks to legalize by obtaining this permit and that the Commission therefore could not properly grant it a permit. We will consider those propositions in reverse order, but before doing so let us refer briefly to the law concerning the extent of this review which is limited as set forth in Section 76—6—16, U. C. A. 1943:

"* * * The review shall not be extended further than to determine whether the commission has regularly pursued its authority * * *. The findings and conclusions of the commission on questions of fact shall be final, and shall not be subject to review."

In applying that section, the extent of the inquiry before this court on findings and orders of the Public Service Commission has been expressed a number of times. In the recent case of *Wycoff* v. *Public Service Commission and Hill,* 119 Utah 342, 1951, 227 P. 2d 323, 326, the court, through Mr. Justice LATIMER, reiterated the well established rule:

"* * * in reviewing cases * * * from the Public Service Commission * * * we are limited in our view to ascertaining whether or not the Commission had before it substantial evidence upon which to base its decision. Only in the event that we find the Commission acted arbitrarily, capriciously or unreasonably in denying applicant's petition can we set aside the order."

In *Mulcahy* v. *Public Service Commission,* 101 Utah 245, 117 P. 2d 298, 299, this court held:

"It is not required that the facts found by the Commission be conclusively established, nor even that they be shown by a preponderance of the evidence. If there is in the record competent evidence from which a reasonable mind could believe or conclude that a certain fact existed, a finding of such facts finds justification in the evidence, and we can not disturb it."

See also *Utah Light & Traction Company* v. *Public Service Commission,* 101 Utah 99, 118 P. 2d 683; *Union Pacific Railroad Company* v. *Public Service Commission,* 102 Utah 465, 132 P. 2d 128; *Collett* v. *Public Service Commission,* 116 Utah 413, 1949, 211 P. 2d 185; and *Fuller-Toponce Truck Co.* v. *Public Service Commission,* 99 Utah 28, 96 P. 2d 722.

With respect to the claim that defendant should be precluded from obtaining a contract carrier's permit because of prior illegal operations, let us note first that the finding of the Commission is not just as the plaintiff complains it was. In plaintiff's brief, it says:

"The findings that Ashton's, Inc., did not *wilfully transport commodities without authority* cannot be supported."

but the actual finding was:

"That there is *no evidence of wilful intent to violate the law* during the many years that Leslie Ashton, deceased, or one or more of his said three sons, as individuals, or as partners, or as corporations, have transported merchandise from Salt Lake City to Heber City, Roosevelt and Vernal, Utah, serving Ashton mercantile stores and gasoline service station located in said cities, and the Commission has treated the operations as private hauls." (All emphasis added.)

This discloses a very important difference. The defendant unquestionably did "willfully transport commodities

without authority" and a finding to the contrary, as suggested by the plaintiff, could not be supported by the evidence. But the finding which the Commission did make "that there is no evidence of wilful intent to violate the law * * *," is justified from the evidence. We are not concerned here with the rule applicable in criminal cases that a person is presumed to intend the natural and probable consequences of his unlawful acts, but the Commission's finding is that they did not deliberately flaunt the law.

Throughout their testimony, the three sons of Leslie Ashton stated that they at all times regarded the three mercantile institutions as a family affair. The evidence discloses that the parties bore a close relationship to each other in their business affairs and they apparently thought they had the right to haul for immediate family members under the closely integrated business system they employed. As Lowe Ashton expressed it:

"We didn't think we needed to [get a permit]. We were operating as we always had, insofar as our feelings toward each other were concerned, and we just didn't make a new application."

In 1938, when Ashton's, in Heber City (defendant) secured a contract to haul Shell Oil Company products from Salt Lake City to other consignees in Heber and Roosevelt, an application was filed and a contract carrier permit was obtained for that purpose, which tends to indicate that they thought that was the only time a permit was necessary and that they recognized the necessity for obeying the law regarding such permits to haul for hire for others than their own family.

There was evidence that the Commission was aware of the method of operation used by the Ashtons so far as transportation for the Ashton interests was concerned; that the secretary of the Commission had instructed Ashton's,

Inc., to report only the operations of the Shell Oil Company hauls, and that the Commission in previous years had treated the other transportation by Ashton's, Inc., as private hauls. There is sufficient evidence to sustain the finding that there was no wilful intent to violate the law.

Plaintiff further insists that because there were in fact violations of the law, this precludes the defendant from obtaining a contract carrier's permit whether the violations were wilful or not.

Notwithstanding the cases which plaintiff cites and quotes to the general effect that law violations should not be rewarded and that carrier authority (certificates of convenience and necessity to common carriers or permits to contract carriers) should not be granted to law violators, it is not a principal of universal application that one who violates the law cannot be granted authority to operate as a carrier. Indeed situations may arise in which the Commission might find it consistent with its duty to the public to award carrier's rights even where there had been law violations. Our statutes do not prohibit granting of a permit to one who has violated the law. The matter of illegal operations is certainly an important factor for the Commission to consider, but it is still for that tribunal to determine whether, under all the circumstances shown by the evidence, the statutory requirements for issuance of a permit have been met, and the public interest and the interest of the parties involved will be served by granting the application.

A good statement on this is contained in *Ex Parte William M. Decker* (Louisiana P. S. C. 1947), 68 P. U. R. 403:

"Where such violations have been trivial, or arose through obvious ignorance of the violated statute or rule, or where the public need for the service offered is so considerable that the commission feels justified in providing that service, even through an admitted violator, the certificate should be granted."

It should be said, however, that in that case the commission denied the application because there had been shown "no such considerable public need for the service" as would justify overlooking the violations.

Plaintiff relies on *Rowley* v. *Public Service Commission*, 112 Utah 116, 185 P. 2d 514, as supporting its contention. In that case, the application for a contract carrier's permit was not based on the need for the service and other factors required by the Sec. 76—5—1, as hereinbefore set out, which is the basis of the application in the instant case, but was grounded on the existence of so-called "grandfather rights" under the same section as reenacted in Chap. 105, Laws of Utah 1945, which provides that:

"The commission shall grant on application to any applicant who was contract motor carrier as defined by this act on the 1st day of January, 1940, a permit to operate as a contract motor carrier on the same highways and to carry on the same type of motor service as he was on said date  *  *."

Permit was denied because the operations upon which the applicant based his claimed rights were illegal. It was pointed out that law-abiding carriers were restricted under that section to their prior operations within the law and that *Rowley* should not be permitted to have enlarged rights merely because he had been operating in violation of the law prior to that date. We approved the holding of the Commission in the *Rowley* case. In doing so, this court said:

"To permit the applicant to carry over all highways, and at the same time to restrict legally operating carriers to designated routes would be to grant a premium for illegality." [112 Utah 116, 185, P. 2d 521.]

The instant case is clearly different from the *Rowley* case just referred to because of the distinction indicated above, that the application does not rest on rights acquired under the so-called "grandfather" clause but rather is based upon the other provisions of the statute and which the Commission found in favor of the defendant.

The plaintiffs argue that if applicant sought to secure a permit based on its operations prior to 1940, it would be prevented from doing so by the holding in the *Rowley* case and that applicant should not be allowed to circumvent that principle of law by using the prior illegal operations to build up a need for that service, and then in this proceeding show the existence of that need to enable it to secure the permit on the basis of inadequacy of the existing common carrier service.

It is true that the applicant introduced evidence of the type of service that had been afforded the shippers whom it desired to continue to serve, and in so doing showed a practice which was technically contrary to law. However, the shippers indicated that this was the type of service required by them, in order to compete with other business establishments. Thus, the type of service of applicants, so far as past performance is concerned, appears to have been developed in response to the need of the shippers rather than having been used to build up a need for those services. The need existed on the part of the shippers and the applicant had merely been filling that need. Where the Commission has found on substantial evidence, as it did here, that defendant has met the requirements of the statute, there is nothing in the holding of the *Rowley* case which would prevent the Commission from granting the permit.

Plaintiff also attacks the finding made by the Commission that there is no reasonable or adequate existing service, stating their position to be that "all the evidence establishes the adequacy and reasonableness of existing service." The following summary of evidence indicates the showing which defendant made on that issue:

Rae Ashton (Ashton Bros., Inc., Vernal) appeared as a witness on behalf of the applicant. The substance of his testimony was that he operated a general mercantile store

at Vernal. In the store were various departments including dry goods, hardware, lumber and groceries. The witness has competitors selling one or more of the same lines of merchandise in their stores, and of course must meet the demands of the buying public in order to continue in business. He said that the practice in the past had been to receive deliveries of meats, vegetables and fruits three times each week on a regular Monday, Wednesday and Friday schedule along with other groceries and other merchandise. The truck carrying this merchandise would leave Salt Lake City in the early afternoon and arrive in Roosevelt from 8:00 to 9:00 p. m. the same evening and Vernal from 9:00 to 10:00 p. m. the same evening. Upon arrival in Vernal, the meats, fruits and vegetables would be immediately unloaded and refrigerated by the night man employed by the store so that the items would be preserved and all merchandise would be available for immediate sale and use on the morning following the delivery. This was one of the essential services required by the shipper and was much better service than that performed by protestants whose trucks arrived in Vernal on the morning of the day following the one on which they left Salt Lake City, and they made delivery of merchandise to the stores in midmorning, and frequently late morning and into the afternoon. He stated that because the fresh meats, fruits and vegetables are so highly perishable items of merchandise, his requirements as to these items are such that the common carrier does not meet his needs. Another duty performed by the applicant consisted of breaking up pool cars at Heber City, and transshipping the merchandise to shippers at Vernal and Roosevelt and also affording storage facilities at Heber City at times so that merchandise could be held there in reserve for later shipment. An important feature as to this is that the shippers in Roosevelt and Vernal could get more rapid service when necessary, under this arrangement, whereas the Uintah Freight Lines

trucks went through Heber City after the close of the business day in that city.

Clarence L. Ashton (Leslie Ashton & Sons, Roosevelt) testified to substantially the same effect as to the conditions at Roosevelt as did Rae Ashton as to Vernal. Both Clarence L. Ashton and Rae Ashton indicated that in order to compete with their competitors, the type of service offered by applicant was necessary; that for those reasons the common carrier was not adequate; and that unless contract carrier service was approved they would be forced to operate their own trucks to enable them to meet their requirements. They indicated further that most of their competitors either patronized contract carriers or used their own equipment to transport their merchandise.

As further evidence of inadequacy of the existing service, applicant presented two witnesses engaged in the business of supplying bread and bakery products to stores in the Uintah Basin and who shipped their supplies of these products from Salt Lake City by Uintah Freight Lines. They testified that the products handled by them were highly perishable, and that the service afforded by Uintah Freight Lines was not satisfactory for their products and indicated the chief reasons were the lateness of delivery and improper handling of merchandise.

There was plenty of evidence to the contrary presented by the plaintiff to the effect that existing transportation facilities were entirely adequate; this resulted in a conflict of evidence which the Commission resolved in favor of the defendant. It is apparent that there was substantial evidence upon which the Commission based its findings so it follows that under the rules set forth herein, ■ the finding should not be disturbed. The order of the Commission is affirmed. Costs are awarded to defendant.

WOLFE, C. J., and WADE, LATIMER, and McDONOUGH, JJ., concur.