333 P.2d 1061

LAKE SHORE MOTOR COACH LINES, INC., a Utah corporation, Orson Lewis, dba Lewis Bros. Stages, and Bingham Stage Lines, a corporation, Plaintiffs,

v.

Hal S. BENNETT, Donald Hacking and Jesse R. S. Budge, Public Service Commissioners, The Public Service Commission of Utah, and Wycoff Company, Incorporated, a corporation, Defendants.

Nos. 8861, 8863.

Supreme Court of Utah.

Oct. 14, 1958.

Skeen, Worsley, Snow & Christensen, Dan B. Shields, Irne Warr, Joseph P. McCarthy, Salt Lake City, for plaintiffs.

E. R. Callister, Jr., Atty. Gen., Gary L. Theurer, Asst. Atty. Gen., Harry D. Pugsley, Salt Lake City, for defendants.

CROCKETT, Justice.

Review of an order of the Public Service Commission granting Wycoff Company, Inc. increased authority as a common carrier to transport small express shipments

in areas already receiving such service from the plaintiffs.

Wycoff has for many years rendered a specialized carrier service from Salt Lake City to all principal points in the State, carrying newspapers and motion picture films. It has a schedule leaving Salt Lake City about midnight for distribution of morning papers, and another leaving about noon for delivery of afternoon papers. In connection with these trips it has heretofore been granted authority to carry confections, cut flowers and certain other articles requiring fast delivery. In the instant application Wycoff sought to eliminate limitations to particular commodities and to haul commodities generally in shipments up to 100 pounds. Inasmuch as this application covered the whole State and threatened encroachment upon many carriers, numerous truck lines and bus companies appeared as protestants to the application.

After the presentation of the applicant's evidence, a stipulation was entered into limiting its request as follows: It would not carry more than 500 pounds on any one trip; shipments would not be separated for the purpose of avoiding the 100-pound limit; the hauling would only be on presently existing schedules, and other minor ones not necessary to detail here. As a result of the stipulation all but seven protesting carriers withdrew their protests. Only

the two plaintiffs, Lakeshore Motor Coach Lines and Lewis Bros. Stages, here challenge the order finally made. Accordingly, we are concerned only with the order insofar as it affects them and the areas they serve.

Plaintiffs contend that the action of the Commission in removing the limits from Wycoff's authority is capricious and arbitrary. They aver that there is no support in the record for a finding that public convenience and necessity require such additional service; but to the contrary, its effect will be against the public interest because it will tend to impair transportation service by undermining the economic well-being of the entirely adequate services presently in operation.

It is well to have in mind the principles underlying the regulation of common carriers by the Public Service Commission. Generally speaking, competition is a good thing because it tends to control excesses and abuses, and to produce the best goods and services at the lowest prices. It thus serves as a vital and stimulating force in our economic and industrial life and is sometimes said to be the life of commerce. An exception to this generality exists in services providing gas, telephone, electricity, transportation and certain others[1] where competition would result in duplication of expensive facilities which the pub-

1. Section 54-4-25, U.C.A.1953.

lic would have to pay for in the long run and thus be inimical to its interest. In order to eliminate such wasteful duplication of facilities and services, businesses of that type are granted monopoly franchises. As a condition to such privilege, the utilities are obliged to submit to regulation by public authority, which takes the place of the controls usually enforced by competition.

 The Public Service Commission is charged with the duty of seeing that the public receives the most efficient and economical service possible. This requires consideration of all aspects of the public interest.[2] When a carrier applies to institute a new carrying service, the Commission must take into account, not only the immediate advantage to some members of the public in increased service, and to the applying carrier in permitting him to enlarge the scope of his business, but must plan long-range for the protection and conservation of carrier service so that there will be economic stability and continuity of service. This obviously cannot be done unless existing carriers have a reasonable degree of protection in the operations they are maintaining.[3]

 These considerations of policy are, of course, primarily the responsibility of the Commission. If the record contains support of any substance for its findings and determination, its order must stand.[4] However, a review by this Court is provided for, and it is undoubtedly intended to amount to something more than a mere rubber stamping of any action the Commission might take by placing some control upon extremes of arbitrary action by the Commission. It cannot go so far as to base an order creating new carrier authority, which in effect takes business away from existing carriers, upon a showing which under scrutiny is so ephemeral as to practically vanish. To do so would constitute the Commission as an autocratic authority with arbitrary power which would render the foundations of the business of existing carriers so insecure as to make operations and planning hazardous and render all attempts to defend their authority futile.

 In proposing a new express carrier service in the area which was being served by the plaintiffs in a reasonably competent and satisfactory manner the burden was upon Wycoff to show, among other things, that public convenience and necessity would be served by the granting of its application.[5] This does not mean that there cannot be parallel transportation services. Many exist and will continue to do so because sometimes carriers, parallel in one area, diverge into others; and

---

2. See Section 54-6-5, U.C.A.1953.
3. Mulcahy v. Public Service Commission, 101 Utah 245, 117 P.2d 298.
4. Uintah Freight Lines v. Public Service Commission, 119 Utah 491, 497, 229 P. 2d 675.
5. See footnote 2, supra.

existing carriers, although rendering good service, may not be sufficient for the existing business or its potential. Proving that public convenience and necessity would .be served by granting additional carrier authority means something more than showing the mere generality that some members of the public would like and on occasion use such type of transportation service.[6] In any populous area it is easy enough to procure witnesses who will say that they would like to see more frequent and cheaper service. That alone does not prove that public convenience and necessity so require. Our understanding of the statute is that there should be a showing that existing services are in some measure inadequate, or that public need as to the potential of business is such that there is some reasonable basis in the evidence to believe that public convenience and necessity justify the additional proposed service. For the rule to be otherwise would ignore the provisions of the statute; and also would make meaningless the holding of formal hearings to make such determinations and render futile efforts of existing carriers to defend their operating rights.

The record is voluminous, containing 2,284 pages of transcript. Forty· two witnesses testified for applicant and 102 for the protestants. It is obviously impractical to do anything other than characterize the testimony generally in this opinion. It is important to focus attention on the fact that applicant's evidence as presented related to the original application before the stipulation restricting it as to quantities to be hauled and to its present schedules; also that for the most part it pertained generally to the State, rather than being pointed directly at the three areas served by the plaintiffs. What the witnesses would have said under such limitations is not before us. The import of applicant's witnesses was that it would be convenient and desirable to them to have another carrier available for quick transportation service, including pickup and delivery. It is obvious, as they without exception admitted, that their self-interest would be served by having more carriers with more frequent schedules. In short, the speediest and cheapest transportation possible, which purpose an additional carrier would tend to serve. In other words, from their point of view, the more carriers the better. This is quite understandable because they were in no way concerned with the long-range planning hereinabove referred to, nor with keeping existing carriers solvent and in operation.

The two protesting carriers each presented evidence of the adequacy of its service. Lakeshore Motor Coach Lines operates a bus line between Salt Lake City and Ogden and intermediate points. Its certificate includes, in addition to passen-

6. See footnote 3, supra.

gers, the right to haul baggage and express shipments with pickup and delivery service in shipments of 150 pounds or less. It operates 14 schedules each way daily. It presented numerous witnesses who testified to the adequacy of such service, particularly in view of other such services in the area by Union Pacific Railroad, the Greyhound Line, Pacific Trailways, and other motor carriers, including Fuller-Toponce Truck Line, which sends 10 to 18 trucks daily with pickup and delivery service.

■ Without detailing herein the carrier services in the areas served by the other plaintiff: Lewis Bros. Stages and Bingham Stage Line, which operates from Salt Lake City to Park City: to Bingham Canyon: to Wendover, Utah and to Tooele, Utah, and all intermediate points, we make this generalization: there is ample specific evidence of the adequacy of carrier service in those areas and there is no specific affirmative showing of either lack or inadequacy of service in such areas by anyone who knew of and had attempted to use the services which were available.

■ As against the position of the plaintiffs, supported by references to evidence from shippers as to the adequacy of their service, the defendant rejoins with the generality that there is evidence in the record supporting their application, relying in the main on reference to witnesses generally. We have heretofore pointed out the impropriety of making blanket assertions and leaving the responsibility to the court to ferret out evidence from the record to support it.[7] It seems fair to assume that a party has set forth in its brief reference to the evidence most favorable to its position. Nevertheless, upon a survey of the record, we find no witness that made showing for the defendant: that he was aware of the extent of the services presently available; that he had attempted to make use of them and found the services wanting; nor did the witnesses express actual dissatisfaction with the services presently offered. There being no such evidence, we see no basis for a finding that public convenience and necessity require additional service. The finding to that effect was therefore capricious and arbitrary.

In view of our conclusion on the issue just discussed, it is unnecessary to consider the other point raised: that the authority granted to Wycoff is an unidentifiable hybrid permitting it to have the benefits of common carrier authority in this express haul without the obligations to serve the public whatever business is tendered.

The order insofar as it affects the territory served by plaintiffs is set aside. Costs to plaintiffs.

7. In re Lavelle's Estate (Immerthal v. First Sec. Bank of Utah), 122 Utah 253, 248 P.2d 372.

McDONOUGH, C. J., and WADE, J., concur.

WORTHEN, J., concurs in result.

HENRIOD, Justice (concurring).

I concur for the sole reason that no one has shown from the record any evidence reflecting any inadequacy of service resulting from the operations of plaintiffs in their respective spheres, while on the contrary the service affirmatively was shown to have been satisfactory.

Existing carriers that have expended risk capital, and have complied with tariff and other Commission requirements, ordinarily are entitled to protection against competition until a proposed competitor or someone else establishes by substantial evidence a failure to perform the service which the Commission has authorized and ordered them to perform.