## GOODRICH v. PUBLIC SERVICE COMMISSION OF· UTAH et al.

No. 7136.   Decided November 8, 1948.   (198 P. 2d 975.)

See 42 Am. Jur. 651. Necessity, form and contents of findings of fact to support administrative findings, note, 146 A. L. R. 209.

*E. F. Baldwin, Jr.* and *Stewart, Cannon & Hanson,* all of Salt Lake City, for appellant.

*Grover A. Giles,* Atty. Gen., *Calvin L. Rampton,* Deputy Atty. Gen., and *Richards & Bird,* of Salt Lake City, for respondents.

LATIMER, Justice.

Certiorari by applicant, Rae H. Goodrich, to review a decision of the Public Service Commission denying him a permit to haul freight for four additional contractees under a contract carrier permit previously issued to him. The protestant of the application is the Uintah Freight Lines, a common carrier authorized to serve the territory wherein the proposed contractees reside. Rae H. Goodrich will be designated as "applicant", Uintah Freight Lines as "protestant", and the Public Service Commission as "the Commission".

In support of its decision, the Commission made the following findings: (1) That the granting of four additional contractees as applied for would impair existing and proposed common carrier service serving the Uintah Basin area. (2) That protestant, Uintah Freight Lines, is ready, able and willing to render reasonably adequate service to the area and shippers covered by this application. (3) That the granting of this application would be detrimental to the best interests of the people in the area covered by the application.

We do not deem it necessary to consider these grounds separately as they are so related and interwoven that they permit collective treatment.

We have repeatedly held that in reviewing cases certified to this court from the Public Service Commission on a statement of error that the Commission's report, findings, conclusions and order are unlawful, we are limited in our review to ascertaining whether or not the Commission had before it substantial evidence upon which to base its decision. Only in the event that we find the Commission acted arbitrarily, capriciously or unreasonably in denying applicant's petition can we set aside the order.

Counsel for the plaintiff concede this principle but assert that the evidence before the Commission was so over-

whelmingly in favor of the applicant that the denial of a permit was arbitrary and unreasonable. This assignment requires a brief resume of the facts.

The controversy arises over the proposed delivery of freight to four contract consignees in three small towns in northeastern Utah; namely, White Rocks, Tridell and Lapoint. These towns are located on a secondary highway running in a circuitous route northeast from Roosevelt, Utah. There are other small towns located on this route which are not to be serviced by applicant and other communities on another route running north and west from Roosevelt, Utah, through what we shall designate as the Bluebell area.

The protestant acquired its common carrier franchise in 1946 from the Sterling Transportation Company, which had been operating in the area since 1937. The applicant was granted his original carrier permit on the 16th day of May, 1946. The service of the protestant is that of a common carrier, while that of the applicant is a more limited contract carrier service. No serious question is raised as to the ability of either to perform their particular service.

Apparently the service given by protestant's predecessor in interest was reasonably satisfactory until 1940. During that year, due to lack of business in the White Rocks, Tridell, Lapoint area, the common carrier service became much more limited and irregular. In 1942 the Office of Defense Transportation requested conservation of tires and fuel and the record indicates that the common carrier service to these towns became more indefinite and uncertain and so continued from 1942 until 1947. During the 1942-1947 period, the carrier service either required the consignees to go to Roosevelt to pick up their merchandise or to await delivery by the mailman or by the truck service of protestant's predecessor that was made available at irregular intervals.

On March 8, 1946, applicant filed his first application to furnish service as a contract carrier in that area. The Commission approved that petition on May 16, 1946. On February 8, 1947, the present application was filed. Very little, if any, improvement was made in protestant's service until some time in March, 1947, when it proposed to the Commission a plan of delivering twice weekly to the people of the three towns involved and twice weekly to the towns in the Bluebell area. This proposal by protestants to improve its service was made after applicant filed his petition for increasing the number of his consignees. However in his application to extend his service, applicant proposed to deliver only once a week for four contractees.

Protestant's plan, which was apparently approved by the Commission, was to haul freight on its main line run from Salt Lake City, Utah, to Roosevelt, Utah, where the merchandise would be transferred from a trailer to a smaller delivery truck. Twice a week the truck would travel from Roosevelt to the White Rocks, Tridell, Lapoint area and twice a week the same truck would travel from Roosevelt through the Bluebell area. This would permit common carrier service to the three towns mentioned above and to a limited number of other small towns on the same route and all small towns on the Bluebell route.

If permitted to operate in the proposed manner, the protestant claimed it could economically maintain a truck at Roosevelt, Utah, which would make the four trips weekly and be available in that town for special runs; that in the event applicant was granted the right to deliver as requested in his petition, the truck would be idle a large portion of the time and the proposed service could not then be maintained to any of the towns in either area without forcing protestant to operate at a loss.

While conceding the record in the case indicates that protestant's service prior to 1947 left much to be desired and that improvement was not suggested until after the ap-

plicant had filed his petition for additional contractees, nevertheless, the record before us does not establish that the Commission acted in an unreasonable and arbitrary manner in denying the application. The Commission was faced with the problem of determining whether or not the granting of the application would be deterimental to the best interests of the people in the area served.

There was evidence before the Commission from which it could reasonably find that by granting the applicant the right to haul freight for additional contractees, not only would the people in the three small towns of White Rocks, Tridell and Lapoint be denied the service of a common carrier, but other nearby communities might also be denied this service. Furthermore, the Commission could reasonably conclude that it would be for the best interests of all of the localities to be served, to have common carrier service twice a week rather than have contract carrier service for four shippers once a week. Even though applicant might adequately serve all of the merchants in the three towns, there are other citizens of those towns which at various times, might need the service of a common carrier. In addition, the merchants and citizens living and doing business in other towns near Roosevelt, Utah, have need for an adequate and prompt common carrier service which might be denied them if the protestant was unable to economically operate. The population of the areas served is small and the shipments limited. In view of these factors and the mileage to be traveled the costs of operation are high. To take the principal shippers away from the common carrier might, and probably would, make the difference between a successful or unsuccessful operation. Undoubtedly the applicant and the four contractees would be benefited by the granting of the permit but to escape a charge of being arbitrary, the Commission need not recognize the demands of a few to the ruination of the many.

The Commission is in a much more favorable position to determine the benefits and detriments of the two competing

systems than is this court. It has decided that the common carrier service will be the most beneficial for all concerned and unless we can determine that the Commission was clearly in error and was capricious in so finding, we are powerless to overturn its decision. No such showing is made in this case.

The order of the Commission is affirmed.

McDONOUGH, C. J., and PRATT, WADE, and WOLFE, JJ. concur.