339 P.2d 1011

**LAKE SHORE MOTOR COACH LINES,
INC., a corporation, Plaintiff,**

v.

David M. WELLING, doing business as Da-
vid M. Welling Co., and Public Service
Commission of Utah, Defendants.

No. 8942.

Supreme Court of Utah.

May 28, 1959.

Wood R. Worsley, Skeen, Worsley, Snow & Christensen, Salt Lake City, for plaintiff.

E. R. Callister, Atty. Gen., Maurice Richards, Ogden, for defendants.

CROCKETT, Chief Justice.

Review of an order of the Public Service Commission granting defendant David M. Welling an increase in authority to operate a taxi service between Ogden, Utah and the Salt Lake City Airport by adding nine additional points of pickup and delivery.

Plaintiff, operator of a bus service between Salt Lake City and Ogden, and intermediate points, contests the order on two grounds: that there is no competent evidence to support a finding of public convenience and necessity for the service; and that the Commission did not give proper consideration to the protection of existing carrier services.

It is to be kept in mind that the functions of common carriers affect the public interest in such a way that the legislature has deemed it proper to grant monopolistic franchises and consequently subject them to general supervision and control of the Public Service Commission.[1] Upon the assumption that the Commission is staffed by personnel of training and experience in this field, it is vested with broad powers and its decisions and orders are endowed with considerable verity. They are subject to review by this court but the review is limited:

"* * * The review shall not be extended further than to determine whether the commission has regularly pursued its authority, * * * The findings and conclusions of the commission on questions of fact shall be final and shall not be subject to review. * * *"[2]

Notwithstanding the above limitation, it must be recognized that the review provided for has a definite and useful purpose, and that the duty and prerogative of the court are something more than a mere perfunctory rubber stamping of actions of the Commission. The latter must fall within the framework of the powers and duties conferred upon the Commission consistent with its purpose of regulating the utilities in question, or powers reasonably and necessarily implied as incidental thereto. Obviously it cannot properly act outside the scope of such authority. Likewise, it cannot obdurately refuse to believe competent, credible and uncontradicted evidence;[3] nor can it make findings of fact unless there is some competent evidence to support them.[4]

The purpose of the review is to determine whether the Commission has acted outside of its jurisdiction, or in excess of its powers, or in a manner which would properly be regarded as capricious, arbitrary or wholly unreasonable in view of the

1. 54-6-4, U.C.A.1953; see discussion in Lake Shore Motor Coach Lines, Inc. v. Bennett, 8 Utah 2d 293, 333 P.2d 1031.
2. 54-7-16, U.C.A.1953.
3. See Jones v. Calif. Pack. Corp., 121 Utah 612, 244 P.2d 640.
4. Utah Light & Traction v. Public Service Comm., 101 Utah 99, 118 P.2d 683.

record before it.[5] Except for the basic limitations just stated, the Commission is given broad powers both in the manner of conducting its proceedings and in its decisions.

Plaintiff makes this bold attack upon the evidence: "In this record there is not a single shred of competent evidence on which a finding of need for this service could be based." This is grounded upon the assertion that, "No shipper (sic) witnesses were introduced by Welling." and that the testimony of Mr. Welling himself amounts to nothing because it was based upon "hearsay statements by Welling of requests he claims had been made."

It is to be remembered that there is considerable difference between court trials and proceedings before administrative agencies. It is undisputable that the legislature intended that the latter should not be burdened with undue formality. Section 54-7-1 states that in the conduct of hearings, " * * * the technical rules of evidence need not be applied"; and that, "no informality in any hearing, investigation or proceeding, or the manner of taking testimony, shall invalidate any order * * [of] the commission." Under a statute[6] similar in meaning this court has uniformly held that hearsay testimony is admissible before the Industrial Commission. However, it is also held that a finding of fact cannot be based solely on hearsay evidence, but it must be "supported by a residuum of legal evidence competent in a court of law."[7] There appears to be no reason why the same rule should not be applicable to proceedings before the Public Service Commission.

The problem raised by the plaintiff is whether the evidence of Mr. Welling was wholly hearsay and thus not capable of supporting the Commission's finding of convenience and necessity. A review of his testimony shows plainly that the greater part of it simply reflects knowledge gained in his activities in carrying on his carrier services. His testimony as to the need for direct service to the airport was naturally based upon his observations of the activities of others and in part upon their requests for and statements about desiring such service. His testimony did not purport to assure the truth of these statements but was a report about the conduct of people, including some of their verbal acts, as observed by him. He is an experienced operator in the type of business involved acquainted with the population, industry, business and potential travel

---

5. See Mulcahy v. Public Service Comm., 101 Utah 245, 117 P.2d 298 for full discussion of powers of Public Service Commission and scope of review by Supreme Court.

6. Sec. 35-1-88, U.C.A.1953.
7. Ogden Iron Works v. Industrial Comm., 102 Utah 492, 132 P.2d 376, 377, and cases cited therein.

in those areas and thus competent to give an appraisal of the need for the service he proposes. It cannot properly be said that his testimony is wholly hearsay.

A moment's reflection makes plain that a very high proportion of the knowledge of mankind is acquired through sharing of the experiences of others from sources which, in one sense, might be considered as hearsay. We do not, and could not, experience everything firsthand. But we do obtain much credible evidence and knowledge from many sources other than experiencing the primary facts themselves.

It can hardly be doubted that if some disinterested motor carrier operator had been called as a witness, he could have testified to the existing conditions and to the need for such service. The fact that Mr. Welling testified in his self-interest may be a basis upon which the Commission could have disbelieved him, had it desired.[8] But it also had the prerogative of believing him, as it did. His testimony, being competent, provided a basis for the finding of public need for the service.

 In regard to its second point: that the Commission did not give proper consideration to the protection of existing carriers: the plaintiff makes the argument, not unfamiliar in cases of this character, that the granting of Mr. Welling's application will cut into and destroy its business. It urges that the Commission was under a misconception of the law as shown by a recital in its Report and Order that "Evidence that the route is not at present adequately served is not necessary to the granting of an application for authority to institute an improved service." It may be that such a statement, excerpted from context and given a literal meaning, would be wrong under some circumstances. However, it is not upon any particular portion of the Commission's report and order that an analysis of its action should rest, but upon its entirety and its relation to the record upon which it is based.

 The Commission is charged with the responsibility of over-all planning so that the public will be furnished with the most frequent, economical and convenient service possible, not only presently, but in the long run. This involves consideration of all of the pertinent factors bearing upon the advisability of authorizing additional service: it includes protection of existing carriers whose services may become impaired or even destroyed by permitting competition, the potential of business, the ability, financial and otherwise, of the applicant to render the proposed service, and the burdening of the highways.[9] The Commission must weigh all of such matters in

8. See Page v. Security Ins. Co., 8 Utah 2d 226, 332 P.2d 666.

9. 54–6–5, U.C.A.1953 sets forth factors to be considered.

determining whether public convenience and necessity require the proposed service. This is true whether it is a "new" service as insisted by the plaintiff, or an "improved" service as implied by some language in the order. The fact that the continued well-being of existing carriers must be taken into account does not mean that once a carrier such as plaintiff is granted a franchise it acquires an inviolable and exclusive right to render a public service merely because it meets its own standard of adequacy.

 It is clear that the Commission did in fact consider the existing services and the effect the new operation would have upon them and upon the public. It found that, "There is no service similar in character to that proposed by applicant." This accords with the facts. Although the plaintiff has bus service between Salt Lake City and Ogden and intermediate points, it operates no direct service to the Salt Lake Airport, which is about three and a half miles west of its terminal in downtown Salt Lake. Thus passengers to and from the airport must utilize a limousine or taxi service in connection therewith. Mr. Welling's service affords a single continuous trip from Ogden to and from the airport without the necessity of transferring from one carrier to another. Formerly he had no authority to serve intermediate points. The new order authorizes him to now serve Hill Field Main Gate, Naval Supply Depot, Roy, Sunset, Clearfield, Kaysville, and Layton; and also Perry and Brigham City north of Ogden, for hauls only to and from the Salt Lake Airport. The added convenience to the public, justifying the Commission's view that "public convenience and necessity require the institution of such service," is obvious. It is not the prerogative of this court to pass upon the wisdom of the determination made nor to substitute its judgment for that of the Commission. Only if on the basis of the record its action appears to be capricious, arbitrary or wholly unreasonable will it be disturbed.

Affirmed. No costs awarded.

WADE and McDONOUGH, JJ., concur.

HENRIOD, Justice (dissenting from result).

I dissent from the result and in doing so, and as a preliminary matter, believe the case should be reversed, if for no other reason, than that Welling, the person who started this whole litigation by filing an application for the service subject of this case, does not even pursue and attempt to protect his interests in this court, filing no brief herein and not appearing to make an oral argument. The Public Service Commission showed a similar disinterest, failing to defend its order by failing to file a brief in support thereof.

Also, as a preliminary matter, it is pointed out that the main opinion recognizes 1) that "the legislature has deemed it proper to grant *monopolistic franchises* and consequently subject them to general supervision and control" of the P.S.C.; that 2) "the duty and prerogative of the court are something *more than a mere perfunctory rubber stamp*"; 3) that the Commission cannot "make findings unless there is some *competent evidence to support them*"; 4) that a "finding of fact cannot be *based solely on hearsay evidence*"; and 5) that the Commission must consider all pertinent factors "including protection of existing carriers whose services may become impaired or even destroyed by permitting competition," with which observations I agree.

When the main opinion concedes that the legislature allows the issue of a *monopolistic franchise*, a corollary of such grant necessarily calls for protection, in the ordinary case, against its invasion if the license properly is being complied with and executed. More than this, and unlike the legislation found in all other states, so far as I am able to determine, the Utah statute,[1] *requires* that the Commission take into consideration the adequacy of existing franchise holders when it says that "before granting a certificate * * * the commission *shall take into consideration* * * the existing transportation facilities* * *"

That the Commission failed to adhere to this statutory interdiction seems apparent when it found that Welling's proposed service was an "improvement," and said that "evidence that the route is not at present adequately served is not necessary to the granting of an application for authority to institute an improved service,"—erroneously concluding, in my opinion, that Welling's proposed service was an "improved" and not a *"new"* service. I cannot see any logical or realistic escape from the fact that Welling's proposed service was an *added,* not an improved service, when his request was to add nine points of departure and arrival to the two he had before. To say such a grant is an improvement is to depart from reality, since to stop and start nine additional times on an erstwhile 35-mile one-stop run, to my mind obviously represents a deterioration in service from a time, comfort and convenience standpoint,—and represents nothing akin to a real improvement in service such as installation of more comfortable facilities, cutting down on time schedules, employment of stewardesses, etc. The only improvement that possibly could inure to the benefit of anyone by virtue of such added stops, starts and delays, would be to the benefit of Welling's personal financial operational interests, a circumstance which, I vouchsafe, would be no reason shared by any of the present commissioners or

1. Title 54-6-5, Utah Code Annotated 1953.

anyone else, to justify any incursion into the franchise rights of existing certificated carriers. This being so, there being no display or proof of inadequacy of existing services, there being an affirmative showing of readiness, ableness and willingness of plaintiff to perform the service under an existing certificate authorizing it to do so, and there being a claim that Welling's service will invade plaintiff's franchise and injure the plaintiff, in my opinion constitutes this court, by this decision, the proverbial "perfunctory rubber stamp" that Mr. Chief Justice Crockett says it is our duty not to be.

If there be any suggestion that the Commission may issue a certificate on a showing of convenience and necessity only, without taking into consideration existing facilities, as is required by statute, it should be dispelled by the previous pronouncements of this court, the most recent of which was made by the writer of the main opinion here, in Lake Shore Motor Coach Lines, Inc., v. Bennett,[2] where it was indicated that before another could invade the field under our statute, existing carriers should have a reasonable degree of protection in the operations they maintain, and the applicant must show that existing services are in some measure inadequate.[3]

Returning to the main opinion's concession that findings cannot be made unless supported by competent evidence, and cannot be made on hearsay alone, we find it justifying its conclusion by saying it properly cannot be said that Welling's testimony was wholly hearsay, prefacing the remark with another statement that Welling was experienced and knew the field, and by way of epilogue, musing that we don't get all our knowledge from firsthand (and I suppose by this is meant competent, non-hearsay) evidence. This is but an observation establishing nothing so far as the question in this case is concerned, since Welling's.

2. 1958, 8 Utah 2d 293, 333 P.2d 1061.
3. See also Mulcahy v. Public Service Comm., 1942, 101 Utah 245, 117 P.2d 298, 305, where it was said that when the question of public convenience and necessity is before it "the commission under the statute may and should take into consideration the existing transportation facilities," and that where one desires to enter a new territory he must show that from the standpoint of public convenience, "existing service is not adequate and convenient, and that his operation would eliminate such inadequacy and inconvenience," and that "the interests of the existing certificate holder should be protected so far as that can be done without injury to the public." See also Goodrich v. Public Service Comm., 1948, 114 Utah 296, 198 P.2d 975; Uintah Freight Lines v. Public Service Comm., 1951, 119 Utah 491, 229 P.2d 675; Utah Light & Traction Co. v. Public Service Comm., 1941, 101 Utah 93, 118 P.2d 681, 683; Gilmer v. Public Service Comm., 1926, 67 Utah 222, 247 P. 284; Lorain-Amherst Transit v. Public Service Comm., 1947, 147 Ohio St. 376, 71 N.E.2d 705; Virginia Stage Lines v. Commonwealth, 1947, 186 Va. 1066, 45 S.E.2d 318; West Suburban Transp. Co. v. Chicago & W. T. Ry., 1923, 309 Ill. 87, 140 N.E. 56.

knowledge and experience are one thing, and might constitute competent evidence if related, but hearsay in the form of anonymous telephone calls where there is no opportunity to verify the extrajudicial utterances, is entirely another; and the fact that we gain knowledge "from many sources other than experiencing the primary facts themselves" may be a truism in daily life but has no place in the courtroom if it is hearsay.

As to whether the Commission could issue an order of the kind here on hearsay evidence only, the main opinion is authority to the effect that it could not, and the authorities generally, and the pronouncements of this court, support such a conclusion,[4] making the decision in this case difficult to understand.

As if to justify the decision, the main opinion says some *disinterested* carrier could have testified to conditions and need. There is no question but what Welling was *interested,* and although he could be believed, one might look somewhat askance at self-serving testimony. But the cold facts are that so far as can be gleaned from this record, the order was based 1) on the testimony of *one witness only*—Welling, and 2) any and all the testimony he gave tending to

show convenience and necessity was based on the most unsatisfactory kind of hearsay testimony, consisting of unidentified telephone calls by unidentified persons at unidentified times—without any competent evidence of any kind in support thereof.

I cannot succumb to the conclusion that such evidence, unassailable by cross-examination and which in the nature of things is quite irrefutable, should be made the vehicle for an invasion of territory quite adequately served by others who hold valuable franchise property rights, whose risk capital no doubt was expended in a not unreasonable reliance upon some kind of reasonable protection against such invasion. Our statute and decisions are friendlier to such risk capital than to ignore adequacy of existing services simply because it could be made to appear that new and additional services might or would benefit the public. If such were the case, certificated entrepreneurs could be made impotent and bankrupt by a larger and wealthier operator's proffer to perform the service at a lesser rate,—certainly a benefit to the public. It must be noted that the applicant *must* show convenience *and* necessity, not just convenience *or* necessity.[5]

4. See also: Ogden Iron Wks. v. Industrial Comm., 1942, 102 Utah 492, 132 P.2d 376; Columbia Steel Co. v. Industrial Comm., 1937, 92 Utah 72, 66 P.2d 124; Garfield Smelting Co. v. Industrial Comm., 1918, 53 Utah 133, 178 P. 57; Frederickson v. Industrial Comm., 1926, 68 Utah 206, 249 P. 480.

5. Union Pac. R. Co. v. Public Service Comm., 1943, 103 Utah 459, 135 P.2d 915.

So saying, this writer does not mean to suggest that if existing services are adequate, the Commission cannot authorize under any circumstances, new and additional services. Each case has its own solution based on reason and common sense in the light of existing or foreseeable facts, keeping in mind the constant tussle in a progressive community between the fostering of public interest and protecting private franchises and personal property rights adjunctive thereto. Any authority granted that represents an unreasonable, unfair and hurtful incursion into existing fields supported by the risk capital mentioned, cannot be justified within the spirit and letter of our statutes and decisions, albeit some resulting benefit to the public might be shown, unless that public benefit is so urgent, compelling and important for the welfare of the community as a whole, that existing operators, in all good reason and good sense, functioning in an atmosphere created by present exigencies, future growth, orderly communal progress and other factors too numerous to mention, should yield, at least partially, to the impact of that progression. This is about the best rule we can enunciate in the field of public utilities in this state of rapidly changing economy where the past might have to bow to the future or the future to the past depending upon the factualities of each case, and where the adequacy of yesterday or today may be the inadequacy of tomorrow. What I say is that we cannot subscribe to the suggestion that once a public benefit becomes demonstrable if a new service were inaugurated, existing certificated operators can be ignored. They are entitled to be heard and their existing facilities recognized as an important weight on the side of private rights on the scales that balance them against the public welfare. Unsupported hearsay has no place in weighting those scales

The Commission statutorily is ordained to consider all important factors touching each individual case, *including the adequacy or inadequacy of existing facilities,* after which it concludes that the service proposed shall be authorized or prohibited, after which such conclusion will not be disturbed if it is based on competent evidence, and is not arbitrary or capricious or the result of misconception of the basis for an order.

In the instant case, had there been any substantial independent evidence to support Welling's testimony, another look would be justified but the quantum and quality of proof here convinces me that the Commission was in error in relying on inferior evidence, that does not measure up to that type justifying an encroachment upon existing rights and facilities. The words "arbitrary" and "capricious" hardly are apropos here, since the Commission did not ignore anything, but became wedded, in my opinion, to an inferior and incompetent type of unsupported evidence.

Although the main opinion says "it is clear that the Commission did in fact consider the existing services and the effect the new operation would have upon them and upon the public," saying that the Commission found "there is no service similar in character to that proposed by applicant," there is nothing pointed out in the record by this decision to justify the conclusion or the Commission's finding since the plaintiff here, without contradiction, had authority to perform this service and was ready, able and willing so to do if any such service were requested. The main opinion's statement as to what plaintiff has been doing or not doing can only mislead the reader into believing plaintiff had no authority to perform the service.

When the main opinion's final observation is that "the added convenience to the public, justifying the Commission's view that 'public convenience and necessity require the institution of such service,' is obvious," it reflects only the payment of lip service to the various principles it claims to espouse, ignores the evidence which does not show convenience *and* necessity except by way of hearsay, and proves it hardly could have meant what it said when it asserted that this court could not be a vehicle for "perfunctory rubber stamping." On the contrary, in my opinion, the court in truth has become a perfunctory rubber stamp insofar as this particular case is concerned.

The matter should be reversed. (Italics mine.)

WORTHEN, J., heard the argument but died before the opinion was filed.