345 P.2d 606

REALTY PURCHASING COMPANY, a Corporation, Continental Hotels System of Texas, a Corporation, d/b/a Congress Hotel, Salt Lake Cab Owners Operating Company, Inc., a Corporation, d/b/a Ute Cab Company, and *Utah Orange Checker Cab Company*, Inc., a Corporation, Plaintiffs,

v.

PUBLIC SERVICE COMMISSION of Utah and Salt Lake Transportation Company, Defendants.

No. 8919.

Supreme Court of Utah.

Oct. 23, 1959.

376

White, Arnovitz & Smith, A. W. Sandack, Salt Lake City, for plaintiffs.

E. R. Callister, Jr., Atty. Gen., Gary L. Theurer, Asst. Atty. Gen., H. R. Waldo, Jr., Donald B. Holbrook, Salt Lake City, for defendants.

CROCKETT, Chief Justice.

This is an original proceeding in this court challenging an order of the Public Service Commission which grants defendant Salt Lake Transportation Company a contract carrier permit to haul passengers

between the Salt Lake Airport and downtown Salt Lake City for four principal airlines: United, Western, Frontier and Bonanza.

Plaintiffs are taxicab companies, and hotel and motel operators in Salt Lake City. They voice three objections to the order: (a) that the defendant's operation is a taxicab service and exempt from regulation by the Commission; and in the alternative, if it is not (b) the Commission erred in issuing a contract carrier permit because defendant's service is that of a common carrier; and (c) that the order is arbitrary and discriminatory because it designates only three hotels as pickup and delivery points.

Defendant for many years has operated limousine service between the Salt Lake Airport and three leading hotels in downtown Salt Lake: the Utah, the Temple Square and the Newhouse. It presently has contracts with the four major airlines named above in which it agrees to maintain adequate limousine service for the convenience of their approximately 1500 passengers on about 50 daily flights. Its equipment and its schedules of over 80 limousine trips per day are sufficient to provide that service. It further agrees to transport the airline crews and airport employees on a "space available" basis. Its compensation comes from charging each passenger $1 per trip. The only control granted the airlines is the right to require minimum standards of service and insurance coverage.

As to the charge that the defendant's operation is a taxicab service and exempt from the regulation by the Commission, we first observe that it seems somewhat paradoxical for the plaintiffs to be so solicitous of the defendant's rights in that regard, while the latter is quite willing to submit to such regulation. The reason for this paradox is not altogether clear except that it provides plaintiffs with another argument that the permit should not have been granted. Whatever their purpose, they here urge that the defendant's operation is not subject to regulation by the Commission under Section 54–6–12 U.C.A. 1953, which provides that no portion of the Motor Vehicle Transportation Act shall apply to:

"(f) * * * [wreckers] * * * [armored cars] * * * hearses, ambulances, *or licensed taxicabs, operating within a fifteen-mile radius of the limits of any city or town. * * *"* (Emphasis added.)

■ It is true that in addition to the limousine service involved here, the defendant operates taxicabs in Salt Lake City, but it insists that the two operations are separate enterprises. The Public Service Commission adopted that view of the matter based on these several factors which differentiate the airport service from the

taxicab operation: that the defendant uses equipment of a special character adapted to this service consisting of seven-passenger limousines with a substantial luggage capacity; that it carries on such operation solely upon its own schedules and routes, including the points of pickup and delivery; and that with respect to such matters it is not subject to the call, direction or control of individual passengers as are taxicabs. These facts provide a basis upon which the Commission could properly determine that the defendant did not fall within the taxicab exemption stated in the statute quoted above, and that the defendant was subject to its regulation.

A more basic question is presented by the contention that defendant's operation is that of a common carrier and not a contract carrier. The distinguishing characteristic of the former is that it transports all persons who request such service;[1] whereas the latter renders a transportation service only to specific parties with whom it has contracts to do so.[2]

In support of their position, the plaintiffs argue that the air passengers, in traveling to and from the airport are but part of the general public; and that the airlines have no authority to contract for such further transportation. We know of no reason why they cannot contract with another to render any lawful service to third persons they desigate as beneficiaries of the contract.[3] The passengers and employees they have contracted this service for are an identifiable group for whom the airlines have a legitimate interest to provide safe, convenient and efficient transportation to and from the airport.

It is to be kept in mind that the contracts do not purport to endow the defendant with the necessary authority to perform the service. If they did, the attempt to do so would be futile. They simply require the defendant to furnish the transportation. That reposes upon it the responsibility of procuring any permit or authority necessary to fulfill its obligation.

A further aspect of the plaintiff's argument is that even if it be assumed that

1. U.C.A. 54–6–1; State ex rel. Public Utilities Commission of Utah v. Nelson, 65 Utah 457, 238 P. 237, 42 A.L.R. 849; McCarthy v. Public Service Commission, 111 Utah 489, 184 P.2d 220; Garkane Power Co., Inc. v. Public Service Commission, 98 Utah 466, 100 P.2d 571, 573; 13 C.J.S. Carriers § 530; Moore on Carriers, 2d Ed., p. 4, 9 Am.Jur., Carriers, Sec. 4, Sec. 10.

2. Our statute simply employs the catch-all method of definition: "Contract motor carrier of passengers" means any person engaged in the transportation by motor vehicle of persons for hire, and not included in the term common motor carrier of passengers as hereinbefore defined. U.C.A. 54–6–1; 13 C.J.S. Carriers § 530; 9 Am.Jur., Carriers, Sec. 10; Moore on Carriers, 2d ed., p. 3.

3. Williston on Contracts, Revised Edition, Sec. 347; Corbin on Contracts, Sec. 774.

defendant could so contract to carry these passengers and operate under such a permit, its actual operation is not of that character but is in fact a common carrier service to the general public. Important on this point is the fact that both common and contract carriers so affect the public interest that the legislature has deemed it proper to subject them to regulation by the Public Service Commission. In addition to the well-known authority of the Commission to supervise the operations of common carriers for the benefit of the public, a generally similar authority is conferred upon the Commission with respect to contract carriers.

The requirements for the granting of a contract carrier permit are set forth in Section 54–6–8, U.C.A.1953:

"If * * * the commission shall determine that the highways over which the applicant desires to operate are not unduly burdened; that the granting of the application will not unduly interfere with the traveling public; and * * * will not be detrimental to the best interest of the people * * * or to the localities to be served, and if the existing transportation facilities do not provide adequate or reasonable service, the commission shall grant such permit."

The above statute manifests recognition of the fact that contract carriers have a definite relationship to other carrier services. Under the authority granted thereby the Commission also properly maintains supervision over such carriers as to the routes traveled, the rates charged, and generally over the nature and extent of the services offered. We do not agree with the argument that the record here compels a conclusion that the defendant is engaging in a common carrier operation under the guise of a contract carrier; nor that the Commission improperly acquiesced in such a subterfuge by granting the permit. Neither the nature of defendant's operation nor the fact that the Commission exercises supervisory control over it compels such conclusion. The question as to the character of the operation and its classification is primarily for the Commission with its expertise in this field. It has the responsibility to the public of supervising and regulating carrier services in general. It found that the defendant met the requirements and authorized it to perform the service, which it deemd a proper one in the over-all transportation picture. It does not seem too important by what title it is called.

If the defendant exceeds or abuses the authority granted in the contract carrier permit by hauling the public indiscriminately, as plaintiffs charge, it is subject to the controls and disciplines administered by the Commission; or if the plaintiffs have a legitimate interest to protect, there may be other remedies against the defendant for

infringing upon their rights. But that is not the purpose of this proceeding, which is to determine whether, under the facts shown, the Public Service Commission had authority to grant the contract carrier permit.

The final contention of the plaintiffs is that the designation of the three hotels as the points of pickup and delivery is unjustly discriminatory and violates their rights under the Federal and State Constitutions,[4] because there is no reasonable basis for selection of those particular hotels to the exclusion of others in the city. We appreciate that there are difficulties inherent in this problem. It is not our purpose or desire to give approval to any particular route, but to confine this opinion to an expression of general principles. Inasmuch as the service is rendered under the aegis of public authority the Commission has the responsibility of seeing that no improper intrigue or collusion exists to favor certain businesses to the exclusion of others and that there be the highest degree of accessibility to all hotels and motels these passengers might desire to patronize consistent with practical and efficient operation of the transportation service. Unless it is quite impractical to do so, it would seem fair and proper to all concerned for the limousines to pick up or deliver passengers at any hostelry requested by them upon the route of the limousine or in the downtown area. But there must be a limitation somewhere as to the stops required. Obviously there cannot be individual service to every hostelry in the city. Therefore the convenience of the passengers and the hotels have to be sacrificed to some extent in the interest of the economy and expedition of operation of the carrier. It is appreciated that such limitations will seem arbitrary to those excluded.

Dealing with this practical problem is in the first instance for the carrier involved, whose proper motivation is to best meet the needs of those who use its service; and secondly, for the Commission to see that the purposes hereinabove mentioned are fulfilled. It appears that the hotels indicated are among the leading hotels of the city; are in competition with each other; and are located at opposite ends of the downtown area of Salt Lake City. We do not view the order made as being so capricious or arbitrary in failing to meet the purposes herein discussed as to warrant interfering with it.[5]

Affirmed. Costs to defendant.

WADE, HENRIOD and McDONOUGH, JJ., concur.

CALLISTER, J., having disqualified himself does not participate herein.

---

4. U.S.Const. Amend. XIV; Utah Const. Art. 1, § 24.

5. Lake Shore Motor Coach Lines v. Welling, 9 Utah 2d 114, 339 P.2d 1011.

HOYT, District Judge (dissenting).

I dissent. I think that the Commission made a mistake of law when it granted a permit to the applicant as a "contract motor carrier of passengers" and I believe that this court should correct such mistake. I am seriously concerned with the effect of a decision of this court approving an order of the commission which classifies an operation such as that which is being carried on by the applicant herein as a contract carrier operation. The fact that the applicant has contracts with third persons (the airlines) which require it to have certain types of conveyances available at designated times to take care of passengers of the airlines and that it agrees that it will not transport other persons than plane passengers and employees of the airlines, is altogether insufficient to justify classification of it as a contract carrier operation. The applicant may be limiting its services to a limited segment of the public, but it is soliciting patronage from and is serving a segment of the public and is collecting from a segment of the public for the services rendered. According to my understanding, a contract carrier is one who makes individual contracts with a limited number of persons or firms, for a consideration to be paid by the contracting party or parties, to haul freight for them or to haul passengers who are employees or members or guests of the contracting party or parties. The catch-all definition of "contract motor carrier of passengers" in Sec. 54–6–1, U.C.A.1953 must be considered in connection with the definition of "common motor carrier of passengers" given in that section and in Sec. 54–2–1(14). It must also be considered in the light of established concepts of the law which classify carriers into two classes.

"The authorities recognize two classes of carriers, namely, private carriers and common carriers; all persons who undertake for hire, to carry the goods of another, belong to one or the other of these classes, the class to which a particular carrier is to be assigned depending on the nature of the business, the character in which it holds itself out to the public, the terms of the contract, and its relations generally with the parties with whom it deals and the public." 13 C.J.S. Carriers p. 25, Sec. 1.

"The authorities recognize two classes of carriers, viz. private carriers and common carriers. All persons who undertake for hire to carry the goods of another, belong to one or the other of these classes. The former, like ordinary bailees for hire, are liable only for the injury or loss of the goods intrusted to them when it results from the failure of themselves or their servants to exercise ordinary care. The latter are liable as insurers for all injury or loss not resulting from

the act of God or the public enemy. The former are not bound to carry for any reason unless they enter into a special agreement to do so. The latter are bound to carry for all who offer such goods as they are accustomed to carry and tender reasonable compensation for them; and if they refuse to perform their obligation in this respect they are liable to respond in damages. Private carriers are such as carry for hire but do not come within the definition of a common carrier." 4 R.C.L. 549, Sec. 8. Cited with approval in People v. Duntley, 217 Cal. 150, 17 P.2d 715, 720.

"To constitute a carrier a common carrier of goods, it is not essential that it carry all kinds of property; if it holds itself out to the public as engaged in the business of carrying only a particular kind of property, it is a common carrier of such property only, and is under no duty to carry other kinds." 13 C.J.S. Carriers § 3(2), p. 30.

The Nelson case which is cited in the opinion is far different from this case. There Nelson was employed by a resort company and paid by it to transport its guests to and from the resort. Here the applicant solicits patronage from plane passengers and collects fares from such passengers. The fact that it has incidental contracts with the airlines to comply with certain requirements which they desire for the comfort and convenience of their plane passengers does not make the applicant their employee or agent. This is expressly negatived in the contracts. The applicant deals directly with its passengers and collects its compensation from them for the service rendered. It holds itself out as ready and willing to transport any and all plane passengers. The operation is definitely competitive with the operators of taxicabs who are among the plaintiffs herein. They therefore have a standing before the court to protest.

The decision of the commission violates a fundamental concept of the law relating to common carriers as distinguished from contract carriers. If allowed to stand it will establish a precedent which will have far-reaching consequences. It will leave no ascertainable line of demarcation between common carriers and contract carriers. That will invite conflict and controversy for the commission and for carriers. It will result in confusion as to the rights of passengers transported in such an operation and as to the liabilities of operators. It should be remembered that as between patron and carrier the duties and liabilities of a common carrier are in some important respects different from that of a private or contract carrier. Also the powers of the commission over a common carrier are different from the powers over a contract carrier. It is my belief that the statute au-

thorizing issuance of permits to contract carriers was intended to apply only to operators who contract by individual contracts with a limited number of persons or firms for a consideration to be paid by them and not to an operator who proposes to solicit business generally from even a minor segment of the public for fares or compensation to be paid by the members of the public so solicited. A truckman may make individual contracts with a limited number of persons to haul goods for them without being classed as a common carrier. Likewise an operator of buses may contract with an employer of workmen to transport such workmen for a consideration to be paid by the employer, and not become a common carrier. But if he decides to solicit the business of furnishing transportation to a large number of workmen, who are now being transported by common carriers, he should not be classified as a private or contract carrier merely by reason of the fact that he makes a contract with the employer of the workmen that he will have buses available at designated times and places for the transportation of such workmen for fares to be paid by them. If he proposes to engage in such business in competition with common carriers he should be required to obtain a common carrier permit. Likewise where an operator engages in a transportation business which is clearly in competition with taxicabs duly licensed to render such services he should comply with the same requirements as the taxicabs and obtain a similar license or permit. Otherwise there will be unjust discrimination. If the commission grants a contract carrier permit to such an applicant and thereby in effect gives sanction to the operation, then upon complaint of a common carrier or a licensed taxicab operator which suffers from the competition, the court should grant relief.

It is not an answer to plaintiffs' protest herein to say that the commission found as a fact that the present transportation facilities to the airport were not adequate. What will the commission say if an applicant makes application for a contract carrier permit to operate buses between a hotel in Salt Lake and a hotel in Ogden? Let it be assumed that the commission finds that present transportation facilities are not adequate. Could it then grant a contract carrier permit to the applicant and thereby authorize him to enter into active competition with existing common carriers merely because he had a contract with the hotels that he would operate only between those termini and would transport only white persons or only colored persons or only male persons or only guests of the hotels? Or will an operator of trucks be eligible to obtain a permit as a contract carrier, and thereby compete with common carriers, if he contracts with a third party that he will haul only certain classes of freight or, at certain hours or only between certain desig-

nated points? I believe that the answer to these questions should obviously be "no." The United States Supreme Court has held that a service which very closely resembles the service being rendered by the applicant in this case was a public service and constituted the operator a public utility. In Terminal Taxicab Company Inc. v. Kutz, 241 U.S. 252, 36 S.Ct. 583, 584, 60 L.Ed. 984, Ann. 1916D, 765, that court said:

"The next item of the plaintiff's business, constituting about a quarter, is under contracts with hotels by which it agrees to furnish enough taxicabs and automobiles within certain hours reasonably to meet the needs of the hotel, receiving the exclusive right to solicit in and about the hotel, but limiting its service to guests of the hotel. We do not perceive that this limitation removes the public character of the service, or takes it out of the definition in the act. No carrier serves all the public. His customers are limited by place, requirements, ability to pay, and other facts. But the public generally is free to go to hotels if it can afford to, as it is free to travel by rail, and through the hotel door to call on the plaintiff for a taxicab. We should hesitate to believe that either its contract or its public duty allowed it arbitrarily to refuse to carry a guest upon demand. We certainly may assume that in its own interest it does not attempt to do so. The service affects so considerable a fraction of the public that it is public in the same sense in which any other may be called so. German Alliance Ins. Co. v. Lewis, 233 U.S. 389, 34 S.Ct. 612, 58 L.Ed. 1011, L.R.A.1915C, 1189. The Public does not mean everybody all the time."

I think that the order of the commission herein should be set aside and that it should be directed to recall the permit which has been issued and deny the application of the defendant company.