441 P.2d 135

PRICHARD TRANSFER, INC., Plaintiff,

v.

W. S. HATCH CO., a Utah corporation, Public Service Commission of Utah, Donald Hacking, Hal S. Bennett and Donald T. Adams, Commissioners of said Commission, Defendants.

No. 10761.

Supreme Court of Utah.

May 20, 1968.

Pugsley, Hayes, Rampton & Watkiss, Salt Lake City, for plaintiff.

Phil L. Hansen, Atty. Gen., Mark K. Boyle, Salt Lake City, for defendants.

CALLISTER, Justice:

Prichard Transfer, Inc., seeks a review of an order of the Public Service Commission granting to W. S. Hatch Co. motor carrier authority to transport sulphuric acid between Mexican Hat and Moab. This order was issued after a rehearing of a previous order denying Hatch's application.

Prior to the contested order, Prichard was the only authorized common carrier to haul the acid between the two aforementioned points. It had performed this service for about two years prior to the filing of Hatch's application for like authority. Hatch, on the other hand, was transporting molten sulphur from a railroad near Potash, Utah (approximately 18 miles from Moab), under authorization from the Interstate Commerce Commission, to Mexican Hat. Thus, there existed a situation where Prichard hauled acid north from Mexican Hat to Moab and its equipment returned empty. Hatch hauled the sulphur from Potash south to Mexican Hat and returned empty. Both carriers used the same highway between Mexican Hat and Moab.

Apparently, the only shipper utilizing the services aforementioned is Atlas Corporation which operates a sulphuric acid plant at Mexican Hat and a uranium mill in Moab. This corporation, through its spokesman, was of the opinion (at the original hearing) that the two one-way hauls were more costly to it than would be a one two-way haul. It had encouraged Hatch to apply to the Public Service Commission for an intrastate right to transport sulphuric acid between Mexican Hat and Moab, and had encouraged Prichard to apply to the Interstate Commerce Commission for

authority to handle the interstate shipments from Potash to Mexican Hat. Hatch followed Atlas' suggestion but, evidently, Prichard did not.

After the original hearing of Hatch's application, the Commission issued what might be termed a "provisional" order. It denied Hatch's application but directed that Prichard and Hatch "jointly and in combination, make and employ every legal means of reducing operating costs and correspondingly reduce the rates * * * and that these carriers report to the Commission on their accomplishments in this regard."

Subsequently, the Commission granted Hatch's petition for a rehearing. Upon rehearing the Commission, having before it the proceedings of the original hearing, heard oral arguments by the two parties and the assertion of both that they had been unable to work out a cooperative plan to reduce operating costs and rates. After due consideration, the Commission granted Hatch the requested authority, deeming it to be in the interest of public convenience and necessity.

This case is unique upon its facts and its determination must be confined to them. Atlas Corporation is evidently the major if not the only shipper utilizing the acid haul by Prichard and the sulphur haul by Hatch. it is the "public" essentially affected by the service of the carriers involved in this dispute. Its representative had testified that if it could not realize the economic benefits from a two-way haul by common carrier, it intended to purchase and operate its own equipment. Such a move by Atlas would obviously be detrimental to both Prichard and Hatch, probably causing them to abandon their existing services.

Under ordinary circumstances rates are not a controlling subject of inquiry in an application for a certificate of public convenience and necessity. However, the Commission is charged with the duty of seeing that the public receives the most efficient and economical service possible.[1] Even without the evidence which was presented to the Commission, it would seem apparent that a two-way haul would be more economical than a one-way haul. We agree with the Commission's statement in its final Report and Order that:

> * * * the facts presented here, present a unique case in which we think consideration of rates and the economies proposed is proper. After hearing argument by both the applicant and protestant on applicant's petition for rehearing and reconsideration, and after hearing additional evidence adduced by both parties, we find that the applicant has sustained the burden of proving public convenience in this particular instance,

1. Lakeshore Motor Coach Lines, Inc., v. Welling, 9 Utah 2d 114, 339 P.2d 1011 (1959).

and that a grant of the application will afford the shipper a combination service at rates to which he is entitled.

We cannot conclude that the Commission acted arbitrarily in this case. Prior to its order under review, it would appear that neither Hatch nor Prichard was rendering an adequate service.

■ Prichard asserts that the granting of the certificate to Hatch will result in a diversion of traffic from it and will adversely affect its ability to serve the area. This may well be. However, although the Commission should take into consideration the rights of existing carriers, that does not mean that it must maintain a monopoly.[2]

Affirmed. Costs to Hatch.

CROCKETT, C. J., and TUCKETT and ELLETT, JJ., concur.

HENRIOD, Justice (dissenting):

I have considerable difficulty in concurring in the reasoning and conclusions of the main opinion and hence dissent.

This case destroys a valuable franchise granted by the Commission by its order. The case seems to be based on a new concept: That an applicant can invade the certificated rights of an existing carrier by showing that a customer has approached him and says he can save some money if a certificate is granted, and by demonstrating that fact. The main opinion's emphasis is directed to saving someone some money, without regard to the carrier's rights under a franchise that cost him plenty in risk capital and equipment, and which quite obviously will result in a much greater loss to him than the saving resulting to the shipper.

Under this decision it would seem to be almost obligatory for the Commission to issue a certificate to any carrier who can make a showing as above, since it would seem somewhat inconsistent and discriminatory to do otherwise. It is not sufficient simply to say this is a unique case, and is decided on its own facts, since there must be dozens of situations where there are one-way haul carriers, with other carriers hauling one way in the opposite direction on the same highway.

The shipper's suggestion that Prichard apply to the I.C.C. in an effort to duplicate Hatch's southbound haul is a rather fatuous one to take Prichard's business if the latter does not choose to follow the suggestion. Such suggestion should have no place in this case or the main opinion, being obviously a pressure play. The likelihood that Prichard could get the I.C.C. to grant him such authority seems almost nil, what with

2. Union Pacific Railroad Co. v. Public Service Commission. 103 Utah 459, 135 P.2d 915 (1943).

expense, delay and an attempt to take part of an interstate authority away from its owner by cutting away its Utah haul. It seems to me that Prichard would have been foolish to attempt a useless gesture.

The Commission in the first instance denied Hatch's application, then granted it on petition for rehearing conducted orally and without any record having been made of it. Hence there really is nothing before the court indicating what specifically happened, except the record made in the original hearing.

The threat that Atlas might buy its own equipment is no firm commitment that it would. This also should not be a factor in the case or a reason in the opinion to justify the virtual destruction of Prichard's certificate and his business based thereon.

I believe the letter and spirit of the act are two-fold: To provide good service at the best rates possible to the "public," not just one shipper, as is the case here, and at the same time protect as arduously the rights of one holding a certificate and the enormous risk capital a carrier has invested. I think that the saving to this one shipper of $68,000 a year, is an opinion, and that even so, Prichard will experience a far greater loss when the protection of the franchise the State issued to him is now withdrawn. The original denial of Hatch's application should prevail.