446 P.2d 416

LAKESHORE MOTOR COACH LINES, INC., Wasatch Motors, Inc., Metro Transportation, Inc., Ogden Bus Lines, et al., Plaintiffs,

v.

SALT LAKE TRANSPORTATION COMPANY, Public Service Commission of Utah, Donald Hacking, Hal S. Bennett and Donald T. Adams, Commissioners of said Commission, Defendants.

Nos. 10904, 10907, 10908.

Supreme Court of Utah.

Oct. 22, 1968.

Harry D. Pugsley and David K. Watkiss, of Pugsley, Hayes, Rampton & Watkiss, S. G. Baucom, F. Gerald Irvine, Irene Warr, Salt Lake City, for plaintiffs.

Wood Worsley, of Worsley, Snow & Christensen, Joseph J. Palmer, Phil L. Hansen, Atty. Gen., H. Wright Volker, Asst. Atty. Gen., Salt Lake City, for defendants.

CROCKETT, Chief Justice.

Plaintiffs seek to reverse an order of the Public Service Commission which enlarges the previously existing authority of the defendant Salt Lake Transportation Company as a common carrier of passengers, including charter operations and special sight-seeing tours, from Salt Lake City to all points in the state of Utah, to include points of origin within 26 miles of the city limits. Thus the effect of this order is that instead of its trips having to originate within the city, they can also originate in the towns and communities which cluster around Salt Lake City within what may be referred to as an extended Salt Lake metropolitan area.

The plaintiffs are common carriers each of whom has separate authority to render passenger service and also similar charter service in certain portions of the metropolitan area referred to. They contend (a) that the Commission acted arbitrarily in failing to find that the service now made available by them was adequate; and (b) in failing to give proper consideration to the necessity of protecting them as existing carriers.

Without setting forth the evidence in detail, it can be said in summary that testimony of witnesses from private business, civic organizations and State government indicates that there is a present and steadily growing need for the extension of the service of the defendant Salt Lake Transportation Company as granted in order to make available adequate transportation to the scenic attractions and the skiing resorts of the State; and there was also testimony that such services as presently exist through plaintiff carriers were either inadequate as performed, or as made available to the public, in that they were not sufficiently promoted and publicized to accomplish the necessary and desired purpose. Notwithstanding the fact that there was some evidence to the contrary, in finding that public convenience and necessity require the change ordered in the defendant's service, the Commission appears to have chosen to believe and regard as decisive the evidence supporting the defendant's position.

■ In our review of this proceeding we acknowledge our agreement in principle with the doctrine advocated by the plaintiffs: that the Commission should observe caution and restraint in granting new authority which duplicates existing services. This is in accordance with the statutory mandate: " * * * to supervise and regulate all common motor carriers * * * so as to insure adequate transportation service * * * and so as to prevent unnecessary duplication of service * * * "[1] Speaking generally, it would seem obvious that to whatever extent existing carriers are not afforded protection, their ability to give adequate and continuing service would be to that degree adversely affected. Yet it must be realized that this does not mean that there can never be any duplication of service.

Due to the number of common-carrier services which center in the Salt Lake City area, which is the hub of the State's commerce, it is unavoidable that there be some paralleling and overlapping. The extent to which this is necessary is something which the Commission is obliged to take into account along with all other pertinent factors in its regulation of such commerce. This requires consideration of both the immediate advantages or disadvantages that may result to the public and/or the carriers involved, and the need of safeguarding the long-range economic stability and continuity of services by existing carriers. Dealing with such questions are matters of policy the responsibility for which the legislature has given to the Public Service Commission, subject only to the right of review by this court.[2]

■ Under well established rules the findings and decisions of the Commission are endowed with a presumption of verity; and they will not be reversed unless it is shown that there is no reasonable basis in the evidence to support them, so that it appears that the Commission's action was capricious and arbitrary, a circumstance we do not find present in this case.[3]

The order as made by the Public Service Commission is affirmed. No costs awarded.

CALLISTER, TUCKETT and ELLETT, JJ., concur.

HENRIOD, Justice (dissenting).

I dissent. The main opinion apparently has abdicated from the letter and spirit of the public utilities act standards for the protection of existing carriers' franchise rights, (as I think was the case in Prich-

---

1. Sec. 54-6-4, U.C.A. 1953, Powers and Duties of Commission.
2. Sec. 54-7-16, U.C.A. 1953, See statement in Lewis v. Wycoff Co., 18 Utah 2d 255, 420 P.2d 264.
3. See Rudy v. Public Service Comm., 1 Utah 2d 223, 265 P.2d 400; Ashworth Transfer Co., et al. v. Public Service Comm., 2 Utah 2d 23, 268 P.2d 990, and cases cited therein.

ard Transfer, Inc. v. W. S. Hatch Co., 21 Utah 2d 106, 441 P.2d 135 (1968)). Under the decision in this case and the Prichard case, a certificate of convenience and necessity, backed up by hard-earned risk capital, is valueless, and any Johnnie Come Lately prophetically but not conclusively may now say I think I can do the job cheaper, I am supported by a numerically greater number of solicited witnesses, who come pretty cheap, and resultingly apparently can inspire a favorable opinion in his behalf by the Commission. A franchise is a franchise, valuable in nature, which should be respected and defended against interlopers who can be muscle men successfully muscling into an established business without initial outlay of risk capital.

A strange thing is happening. Applicants before the P.S.C., seeking to water down the franchises of others, just as vehemently discount the applications of others seeking to invade their own domains in a different case. In my opinion the whole area is a dog eat dog situation, with an increasing tendency on the part of commissions to permit such Johnnie Come Latelys to invade what was considered invaluable rights by the simple vehicle of making representations that they can do the job cheaper than the established entrepreneur, bolstered only by witnesses that can be bought for a dime a dozen. This case to me reflects such a tendency, which in turn represents a dime store philosophy and an unwitting discouragement by commissions of private risk capital, and an encouragement for granting the fruits of a private endeavor to those who had no interest in the venture until the nurtured twig finally bore top bananas.