**RIO GRANDE MOTORWAY, INC., Plaintiff,**

v.

**PUBLIC SERVICE COMMISSION of Utah, Milly O. Bernard, Olof E. Zundel, and Kenneth Rigtrup, Commissioners of Utah, and Uintah Freightways, Defendants.**

**No. 15156.**

Supreme Court of Utah.

Dec. 13, 1977.

Mark K. Boyle, Salt Lake City, for plaintiff.

Robert B. Hansen, Atty. Gen., Brinton R. Burbidge, Asst. Atty. Gen., Irene Warr, Salt Lake City, Noall T. Wootton, Utah County Atty., Provo, for defendants.

CROCKETT, Justice:

Rio Grande Motorway seeks review and reversal of an order of the Public Service Commission which granted to Uintah Freightways authority to haul general commodities between Salt Lake City and Price, Utah.

Uintah Freightways (hereinafter Uintah) is a common carrier which, in 1958, was granted a Certificate of Convenience and Necessity to haul general commodities: (a) between Salt Lake City easterly to all points within the Uintah Basin, including Duchesne and Vernal, and (b) from those

points southward to Price via Duchesne and all intermediate points.

■ Uintah's position is briefly this: that by that certificate it can haul merchandise to the Uintah Basin and can then haul to Price. We note here that it does not appear that this hearing was concerned with whether there had to be a separate consignment to a Uintah Basin point and a separate consignment from that point to Price as the certificate seems to authorize, or whether the two grants of authority could be "tacked" together and thus authorize the haul between Salt Lake City and Price by this indirect route.[1] But the evidence indicates that Uintah had so construed and so operated under its Certificate.

On August 20, 1976, it filed a petition with the Public Service Commission seeking authority for a short-cut route, across the hypotenuse of the triangle, going more directly from Salt Lake City southeasterly to Price, via Provo, Thistle and Soldiers Summit, but serving no intermediate points. Uintah presented evidence that hauling merchandise consigned between Salt Lake City and Price over the new route would shorten a round trip by 140 miles, would save about 3½ hours of travel time and would save over 8,000 gallons of gasoline per year.

We recognize the advisability of effecting such economies in travel distance, man-hours, fuel and other operating expenses as can be achieved consistent with operating within the authority granted and the requirements of law. It is out of this principle that the doctrine of allowing "alternate routes" or as sometimes termed "route deviations" is recognized. In order to avoid incursions into the rendering of new services under that doctrine, the Interstate Commerce Commission has a rule that if the mileage over the alternate route is not less than 80 percent of the total distance over the authorized route, that shall be prima facie evidence that a material change in the competitive position will not result from the carrier's use of the proposed alternate route.[2] We acknowledge that such a rule is not part of our State law, nor binding upon our Commission. Yet it does seem to provide a pretty good general guideline which may be given consideration on such problems. Howsoever that may be, this change in route could not realistically be regarded as simply a "route deviation" or an "alternate route."

■ The position essayed by Rio Grande before the Commission and here is that a prerequisite to the issuance of the order under challenge was that the requirements of U.C.A.1953, Sec. 54–6–5, for the issuance of a Certificate of Convenience and Necessity must be fulfilled. The Commission rejected that contention and specifically stated that that section did not govern the proceeding. It regarded the petition and the hearing thereon as one for nothing more than, as the petition states, an "alternate route" or, as the Commission called it, a "route deviation." The Commission therefore did not concern itself with the other factors required by Sec. 54–6–5 such as the adequacy and potential continuance of existing services, the effect upon the public and the burdening of the highways,[3] but did recite that there would be no serious impairment of the services of other carriers and that it would be in the public interest to grant the petition. Upon that basis, it granted the petition.

All of the foregoing is not without some plausibility if it be assumed that Uintah had previously been granted a basic authority to haul between Salt Lake City and Price. In analyzing the soundness of the Commission's order it is necessary to cut away the brush and obfuscation and look at the stark facts as to the effect of the order. Prior to that order, Uintah had no right to

---

1. That generally there must be a showing of public convenience and necessity before two or more separate authorities may be integrated into one authority providing an entirely new service, see *McKenna v. Nigro,* 150 Colo. 335, 372 P.2d 744 (1962); *Enid Transfer & Storage Co. v. State,* 201 Okl. 274, 190 P.2d 150 (1948).

For additional cases, see PUR Digest, Certificates, Sec. 131.

2. 49 C.F.R. 1042.4(c)(11).

3. See *Lake Shore Motor Coach Lines v. Welling,* 9 Utah 2d 114, 339 P.2d 1011 (1959).

haul directly between Salt Lake City and Price and thus in competition with Rio Grande and other carriers. But this order purports to give it such authority, under which it can publish tariffs and offer rates in direct competition with them. If those facts are thus looked upon realistically, the conclusion seems inescapable that this grant confers an authority of a new and different character and creates competition between Uintah and Rio Grande and other existing carriers which did not exist under the authority Uintah previously had. We therefore can see no justification for the failure of the Commission to apply the requirements of 54–6–5 to Uintah's petition.

It is our opinion that if Uintah Freightways is to be granted the authority to haul freight directly from Salt Lake City to Price, it should be done in a forthright manner and by compliance with the requirements of U.C.A.1953, Sec. 54–6–5, rather than to permit it to acquire such authority by the back-door method here employed. In view of the failure to so comply with the law, the order of the Commission granting such authority is vacated. Costs to plaintiff.

ELLETT, C. J., and MAUGHAN, WILKINS and HALL, JJ., concur.