452 P.2d 318

**LEWIS BROS. STAGES, INC., a corporation, Plaintiff,**

**v.**

**The PUBLIC SERVICE COMMISSION of Utah et al., and Wycoff Company, Inc., Defendants.**

**LINK TRUCKING, INC., et al., Plaintiffs,**

**v.**

**The PUBLIC SERVICE COMMISSION of Utah et al., and Wycoff Company, Inc., Defendants.**

**Nos. 11081, 11082.**

Supreme Court of Utah.

March 24, 1969.

Irene Warr, of McCarthy & Warr, William S. Richards, of Gustin & Richards,

---

2.  Mayhew v. Standard Gilsonite Company, 14 Utah 2d 52, 54, 376 P.2d 951, 952 (1962).

Wood R. Worsley, Stuart L. Poelman, Salt Lake City, for plaintiffs.

Phil L. Hansen, Atty. Gen., Harry D. Pugsley, of Pugsley, Hayes, Rampton & Watkiss, Salt Lake City, for defendants.

TUCKETT, Justice.

The plaintiffs seek a review of an order of the Public Service Commission. The above entitled cases were consolidated for hearing before the court and the court's decision will apply to both cases and will be determinative as to both.

The Wycoff Company,. Incorporated, made application to the Public Service Commission of Utah for a certificate of convenience and necessity to operate as a common carrier by motor vehicle for the transportation of general commodities in express service between all points and places in the state of Utah over established highways. Prior to the hearing Wycoff amended its application to restrict the pro· posed service to shipments weighing 1000 pounds or less.

Since February 1959, Wycoff has been operating a general commodities express service between all points in the state of Utah except between Salt Lake City and Ogden. Wycoff's authority was restricted to the transportation of shipments weighing not more than 100 pounds and not more than 500 pounds to be carried on any one schedule. The plaintiffs in each of the cases above referred to appeared as protestants to the application of Wycoff. The hearings were conducted by an examiner appointed by the Commission, which hearings were extensive and during which numerous witnesses were called by the respective parties. At the conclusion of the hearings the examiner made findings of fact and conclusions which the Commission adopted as its own findings and conclusions and issued its order granting Wycoff's application with a limitation of shipments of not to exceed 250 pounds on a weight basis.

A record of the transcript of the testimony of the witnesses has not been prepared. Such record was not before the Commission nor is it before this court.[1]

It is the contention of the plaintiffs in the above mentioned cases that the evidence does not show a need for the service proposed under the Wycoff application and that the order of the Commission is not supported by the evidence and therefore arbitrary. Counsel for the various parties involved in these proceedings do not agree as to what the record of the testimony of the various witnesses shows. We are asked to review the order of the Commission not upon the facts revealed by a record of the evidence but rather upon the claims of counsel as to what the facts are. As there is no agreement among the par-

1. Sec. 54–6–5, U.C.A.1953.

ties as to what the record would reveal, the court is unable to perform its function of reviewing the proceedings of the Commission as contemplated by the statute,[2] and we are of the opinion that the order of the Commission should be set aside until such time as the record is completed and reviewed by the Commission and returned to this court. It is so ordered.

HENRIOD and ELLETT, JJ., concur.

CROCKETT, Chief Justice (concurring in part, dissenting in part).

I concur in the part of the main opinion which vacates the order of the Public Service Commission granting to Wycoff an increase from 100 pounds to 250 pounds on express shipments. But it is my opinion that that should be the final order in this proceeding, rather than to return it for another cumbersome and costly ride on the merry-go-round of litigation.

It appears that the Commission based its decision upon extensive memoranda of the parties setting forth abstracts of the evidence, in conjunction with the recommendation of the examiner under procedure provided by statute.[1]

The Wycoff service, admittedly paralleling routes of established existing common carriers, was first justified and granted as to newspapers and movie films which required speedy and frequent service. Later there were added, small shipments of other items of the nature of surgical supplies, drugs and medicines, which also could be justified on the basis of need for speedy and frequent service. A limitation of 50 pounds was placed on such shipments. There have been persistent and continual attempts to remove restrictions and intrude into general competition with existing common carriers. The 50-pound limitation was eventually raised to 100 pounds. The limitations mentioned could have been for no other purpose than recognition of the necessity and the propriety of keeping Wycoff limited to small shipments requiring speedy and frequent service and thus preventing it from undue intrusion into general competition with and tending to destroy the businesses of the regular established common carriers of freight, the protestants here, and the protection of which the Commission's order itself recognizes.[2]

In the instant proceeding Wycoff first applied to remove the limitation entirely, then later amended it to increase the limitation to shipments up to 1000 pounds. Under the examiner procedure provided by statute, hearings were held in various parts of the State over a period of several months.

2. Sec. 54–7–16, U.C.A.1953. See also Lake Shore Motor Coach Lines v. Bennett, 8 Utah 2d 293, 333 P.2d 1061.
1. See Sec. 54–1–3, U.C.A.1953.

2. See statements in Mulcahy v. Public Service Comm., 101 Utah 245, 117 P.2d 298; Lake Shore Motor Coach Lines, Inc., v. Bennett, 8 Utah 2d 293, 333 P. 2d 1061.

Upon the basis of extensive memoranda of the parties setting forth abstracts of the evidence, and in conjunction with the recommendation of the examiner, the Public Service Commission rejected Wycoff's application to increase the limit to 1000 pounds but, as above indicated, granted an increase from 100 to 250 pounds and removed the limitation on any one schedule. Difficulty has been experienced in getting a detailed transcript of the protracted hearings in this proceeding. However, in view of the issue here involved and the way the Commission dealt with it, I think it proper in this particular situation to assume that counsel have selected and presented in their extensive memoranda the evidence most favorable to their respective contentions; and to base our review on the same record upon which the Commission based its findings and order.

In its findings the Commission set forth a statement as to the operations of the protesting carriers. But it made no findings as to their inadequacy. On the contrary, in its conclusions it recited that "their general freight service has been adequate." It therefore very properly rejected Wycoff's application to increase the weight limitation to 1000 pounds. The significant point is that this is a plain indication of the Commission's recognition of the rights of the protesting carriers and of the necessity of protecting them from substantial competition by Wycoff in the general carrying of freight. However, instead of a forthright denial of Wycoff's application which would have accomplished that purpose, the Commission appears to have resorted to an expedient by increasing the limit from 100 to 250 pounds and removing the schedule limitation. By this "half-way," or rather, "quarter-way" measure, the Commission neither afforded the plaintiff carriers the protection it seemed to recognize they should have, nor did it keep Wycoff to the express service of small shipments which would have accomplished that purpose.

On the basis of the record presented, even the evidence emphasized and relied upon by the defendant, it is plain that the increase of 250 pounds per shipment and removal of schedule limitations effect a marked change in the character of the service heretofore allowed Wycoff of a speedy, frequent express service of small shipments to one which will constitute a very substantial intrusion into the field of general freight transportation.[3] The conclusion seems inescapable that this change cannot do other than have a proportional adverse effect upon the regular common carriers of freight and tend to im-

3. For example, the Commission's findings recite, that over a test period about 75 per cent of intrastate shipments of one of the protesting carriers was under 1000 pounds.

pair those services in the long run. It is therefore my opinion that in this instance, on the basis of the record brought here, it can be concluded that the Commission has not "regularly pursued its authority" [4] in that it has not discharged the responsibility imposed on it: "* * * to supervise and regulate all common motor carriers * * * so as to insure adequate transportation service * * * and so as to prevent unnecessary duplication of service * * *." [5] It is, therefore, my belief that the proper judgment of this court would be to vacate the order and thus terminate the proceeding.

CALLISTER, J., concurs in the opinion of CROCKETT, C. J.

4. See Sec. 54-7-16, U.C.A.1953.

5. Sec. 54-6-4, U.C.A.1953, Powers and Duties of Commission.